**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

| | | |
|---|---|---|
| **PATRICK DUNN and HOPE ELLY,** | ) ) ) | **CIVIL ACTION NO.** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) | _____ |
| **PIER PARK, LLC, and SIMON PROPERTY GROUP, L.P.** | ) ) ) | |
| **Defendants.** | ) ) | |

## COMPLAINT

### I.     INTRODUCTION

Plaintiffs, Patrick Dunn and Hope Elly, files this Title III, ADA action, pursuant to 42 U.S.C. §12181, et. seq. In Count One of the Complaint, Plaintiffs seek to enjoin the Defendants to remove architectural barriers. In Count Two, Plaintiffs seek to enjoin Defendants to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiffs seek to enjoin the Defendants' use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers. Count Four seeks to enjoin Defendants' failure to design and construct the establishment to be readily accessible to and usable by individuals

with disabilities.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.  Because this is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, <u>et. seq.</u>, (hereinafter referred to as the "ADA") and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.  Venue is proper in this Court, the United States District Court for the Northern District of Florida pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Northern District of Florida.

3.  Plaintiff, Patrick Dunn, was involved in an automobile accident that caused permanent damage to his C-7 vertebra in his spinal cord. As a result, he became paralyzed, which has permanently confined him to a wheelchair. The extent of Plaintiff's physical problems limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Plaintiff is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical

impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also, 28 C.F.R. § 36.104.

4.   Plaintiff, Hope Elly, suffers from cerebrovascular accidents, which are more commonly known as strokes. These strokes have affected both her motor and sensory functions, which causes inactivity and/or paralysis of the muscles; therefore, maintaining balance, walking, and the ability to use her hands is extremely difficult. As a result of her disability, she relies on mobility aids for locomotion. The extent of Ms. Elly's physical problems limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, grab, twist, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Elly is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *See also,* 28 C.F.R. § 36.104.

5.   Defendant, Pier Park, LLC, (hereinafter "Park"), is a Limited Liability Company that is both registered to conduct business and is conducting business within the State of Florida sufficient to create both general and specific in personam jurisdiction. Upon information and belief Pier Park, LLC, "owns" and "leases" the Pier Park establishment located at

600 Pier Park Dr., Panama City Beach, FL 32413. 42 U.S.C. § 12182. Pier Park is a commercial establishment in that it is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Moreover, the establishment features over one million square feet of open-air regional lifestyle shopping, providing unique retailers, tourist attractions, and dining options to the public, which qualifies Pier Park as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

6.    Defendant, Simon Property Group, L.P., (hereinafter "Simon"), is a corporation that is both registered to conduct business and is conducting business within the State of Florida sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Simon Property Group, L.P is the "developer" and "operates" the Pier Park establishment located at 600 Pier Park Dr., Panama City Beach, FL 32413. 42 U.S.C. § 12182. Pier Park is a commercial establishment in that it is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Moreover, the establishment features a "Simon experience" that is a destination and gathering place where communities come together to share the joy of discovery through dining, shopping, and entertainment, which includes over one million square feet of open-air regional lifestyle shopping, providing unique

retailers, tourist attractions, and dining options to the public, which qualifies Pier Park as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

7.   All events giving rise to this lawsuit occurred in the Northern District of Florida and the Defendants are citizens thereof.

8.   Plaintiff, Patrick Dunn travels to Panama City Beach at least once a year for a week and often more than that. He lives in Andalusia, Alabama, approximately 115 miles from Panama City, which is a vacation and entertainment destination. Mr. Dunn enjoys the social activities and entertainment whether it is going to the beach or going to enjoy live music at the bar with friends and family. At least once a year Mr. Dunn goes to Pier Park because of the open-air regional lifestyle shopping, providing unique retailers, tourist attractions, and dining options. Mr. Dunn enjoys going to Pier Park, which is subject to this action. Mr. Dunn will return not only to shop and dine at Pier Park, but also to confirm compliance with the ADA by Pier Park. Mr. Dunn does not know exactly when he will go back to Pier Park, because he has not planned out every vacation trip for the rest of his life. Such specific planning is not necessary to invoke the ADA.  See, e.g. *Parr v.  L & L*

_Drive Inn Restaurant_ 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and

_Segal v. Rickey's Restaurant and Lounge, Inc_. No. 11-61766-cn, (S.D.

Fla 2012) ("_Specification as to date and time of return to this public_

_accommodation is impossible due to the nature of the event. Fast food_

_patrons visit such restaurants at the spur of the moment_".). Mr. Dunn

definitely intends to return to Pier Park, even after all ADA Title III

violations are remediated.

**9.** Plaintiff Hope Elly, is a resident of Grand Bay, Alabama. She enjoys

taking weekend vacations in Panama City Beach, Florida, at least once

a year. Usually, Ms. Elly goes more times than that. While vacationing

in Panama City Beach, Ms. Elly enjoys going to the world's most

beautiful beaches, to the many eateries and to the various premier shops

and boutiques that make up Pier Park. Ms. Elly enjoys going to Pier

Park, which is subject of this action, and to the calming Panama City

Beach atmosphere. Specifically, Ms. Elly likes to go to Pier Park

because she enjoys the open-air regional lifestyle shopping, providing

unique retailers, tourist attractions, and dining options. Ms. Elly intends

to continue going to the Pier Park establishment again because she

wants to enjoy Pier Park's features of over one million square feet of

open-air regional lifestyle shopping, providing unique retailers, tourist

attractions, and dining options. She will return not only to shop, eat and enjoy all the good and service Pier Park offers, but to also confirm compliance with the ADA by Pier Park. Ms. Elly does not know exactly when she will go back to Pier Park, because she has not planned out every trip or shopping trip for the rest of her life. Such specific planning is not necessary to invoke the ADA. See, e.g. *Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc*. No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Ms. Elly definitely intends to return to Pier Park, even after all ADA Title III violations are remediated.

10. Because of the barriers described below in paragraph 22 and throughout the Complaint, Plaintiffs have been denied full and equal enjoyment of the Defendants' premises on the basis of their disabilities.

11. Plaintiffs accordingly, have Article III standing to pursue this case because (1) they are disabled, pursuant to the statutory and regulatory definition; (2) the Defendants' establishment is a place of public

accommodation, pursuant to the statutory and regulatory definition; (3)

they have suffered a concrete and particularized injury by being denied

access to the establishment by architectural barriers, by being denied

access by the Defendants' practices described throughout this

Complaint, and by Defendants' denial of the use of the establishment

for their full and equal enjoyment as the able-bodied, as described

throughout the Complaint, and (4) because of these injuries there exists

a genuine threat of imminent future injury, as described in paragraph

20.

## II.    PLAINTIFFS' CLAIMS

### ADA, Title III

12.  On or about July 26, 1990, Congress enacted Title III of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial

enterprises were provided one and a half years from enactment of the

statute to implement its requirements. The effective date of Title III of

the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508

(A); *See also*, § 36.304).

13.  Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the

Defendants' establishment is a place of public accommodation in that

it is a shopping mall featuring over one million square feet of open-air

regional lifestyle shopping, providing unique retailers, tourist attractions, and dining options to the public. Accordingly, it is covered by the ADA and must comply with the Act.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(iv)
### *(Architectural Barriers)*

**Defendants' Existing Establishment Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in This Complaint**

14. Plaintiffs are informed and believe based on publicly available information that the Pier Park establishment located at 600 Pier Park Dr., Panama City Beach, FL 32413, was originally constructed in 2006.

15. Plaintiffs are further informed and believe based on publicly available information that in 2007 the Pier Park establishment located at 600 Pier Park Dr., Panama City Beach, FL, underwent a series of construction projects including but is not limited to construction of new facilities, retail shell building, tenant finish outs, warm dark shell construction, vanilla box construction. Plaintiffs are further informed and believe that in 2008 underwent many construction projects including but not limited to warm dark shell construction, new construction of facilities, remodeling of interior spaces, interior fitouts

of new spaces, vanilla box construction. Plaintiffs are informed and believe based on publicly available information that Defendants performed construction in 2009 to include but not limited to warm shell construction and vanilla box construction. Plaintiffs are informed and believe based on publicly available information that Defendants performed some construction and improvements in 2010. Plaintiffs are informed and believe based on publicly available information that in 2011 Defendants constructed new facilities. Plaintiffs are informed and believe based on publicly available information that in 2015 Defendants performed interior improvements/renovations. Plaintiffs are informed and believe based on publicly available information that Defendants performed some construction and tenant build outs in 2016.

16. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use*

*wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

17. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards

for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991*

*Standards, the 2010 Standards are applicable*. See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

18. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

## Plaintiffs' Concrete and Particularized Standing to Pursue an Injunction

19. The Defendants have discriminated, and continues to discriminate, against Plaintiffs, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at the Pier Park establishment in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b). Defendants' failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

20. As described above, prior to the filing of this lawsuit, Plaintiffs were denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendants' establishment. Plaintiffs' access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the establishment in violation of the ADA. Because of the foregoing, Plaintiffs have suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

21. Plaintiffs have definite plans to return to the Pier Park establishment in the future, as described in paragraphs 8 and 9. Plaintiffs will return to Pier Park within the next few months not only to enjoy the over one million square feet of open-air regional lifestyle shopping, providing unique retailers, tourist attractions, and dining options, but also to see if Pier Park has repaired the barriers, and changed its practices and procedures. Plaintiffs will continue to do so even when Pier Park is repaired. Also, and of vital importance, the barriers are not just created by construction issues; instead, many of them are created by human activity, from the way the Defendants' workers at the establishment use the physical architectural elements of the establishment. The barriers created by human activity will need to be reviewed and maintained

forever, to be sure Defendants' management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendants, Plaintiffs will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendants on the basis of their disabilities. The Eleventh Circuit, held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), that when architectural barriers have not been remedied "*there is a 100% likelihood that plaintiff… will suffer the alleged injury again when he returns to the store*." Additionally, "*[A]n alleged constitutional infringement will often alone constitute irreparable harm.*" *United States v. Arizona*, 2011 WL Case 1:11-cv-01804-TWT at *19; see also *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271-72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (*finding "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."*)) Due to the definiteness of Plaintiffs' future plans to continue visiting the subject establishment, there exists a genuine threat of imminent future injury.

**Architectural Barriers**

22.  Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

23.  Plaintiffs have been to and throughout each facility and area: 30A, RMG Toys, Andi's at the Pier, Candy Maker Candy Store, Carters/Oshkosh B'gosh, Sunglass World, Déjà vu, Marble Slab, Pink Narcissus, Pompano Joe's, Ron Jon Surf Shop, Runway Collection, Salt Life/Latitude 29, Schlotzsky's, Smoothie King, The Florida House, Unique Boutique, Amore Italian Ice, Bumper Boats and Super Bungee area, Cubby Caboose Mini-Express, toilet room in Pier Park Amusements area, restroom by Marble Slab, family toilet room by Marble Slab, area information booth, restroom by The Florida House; from the parking areas, to and throughout the Pier Park lounge seating and seating tables in the common areas; from to and throughout the retail areas; to the check-out and service counters, to the dressing rooms, throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to all of which is

more specifically described below. Defendants' establishment located at 600 Pier Park Dr., Panama City Beach, FL 32413, more commonly known as "Pier Park", violates the ADA in particular but not limited to:

**30A**

a) Defendants provides a check-out counter at 30A for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    A. The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

        i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above

the finished floor positioned for a forward approach;

C.  There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

D.  There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E.  Defendants locate merchandise within the counter surface and consequently obstructs the required clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the check-out counter;

F.  Defendants fail to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

b)  The front entrance floor mat is not stable, firm, or otherwise secured to the floor which prohibits wheelchair users from being able to fully and

equally access the goods, services, privileges, advantages, or accommodations at the facility;

c)  Defendants provide dressing rooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i.  The existing purported accessible dressing room fails to conform to the ADA Standards for Accessible Design;

ii.  There is no signage displaying the International Symbol of Accessibility indicating an interior space within the dressing room as ADA accessible;

iii.  Defendants fail to provide at least five percent (5%), but no less than one in each cluster, ADA accessible dressing rooms;

iv.  The curtain leading into the dressing room requires tight grasping, pinching and/or twisting of the wrist;

v.  The clothing rod within the dressing room exceeds the maximum allowed unobstructed reach range of 48 inches;

vi. There is not at least one ADA accessible dressing room that provides a bench with a back support and/or is affixed to the wall;

vii. There is not at least one ADA accessible dressing room that provides a bench with the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

viii. There is not at least one dressing room that provides a bench that meets the minimum required length of 42 inches;

ix. There is not at least one ADA accessible dressing room that has a bench seat that is 20 inches deep minimum and 24 inches deep maximum;

x. There is not at least one ADA accessible dressing room that has a bench that is 17 inches minimum and 19 inches' maximum above the finished floor;

xi. Defendants fail to maintain the accessible features of the dressing room that are required to be readily accessible to and usable by individuals with disabilities;

**RMG Toys**

d)   Defendants provide a check-out counter at RMG Toys for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A.   The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

i.   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

ii.   There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B.   The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with

disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendants fail to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

## ANDI'S AT THE PIER

**e)** There is a clothing stand that obstructs the required perpendicular clear floor or ground space at the facility entrance door;

**f)** Defendants provide an accessible route to and throughout the shopping retail aisles at Andi's at the Pier for able-bodied individuals but fails to provide an ADA accessible route to and throughout the retail shopping aisle for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at Andi's at the Pier, including but not limited to the following failures of Defendants:

**i.** Throughout the accessible route there is merchandise that is for sale to the public that obstructs the required 36 inches of clear floor space on the accessible route which

prohibits individuals with disabilities to have the same shopping experience as individuals without disabilities;

ii. Defendants locate its merchandise clothing racks and shelves within the clear floor or ground space of the accessible route and consequently obstructs the required clear floor space on the accessible route, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to maneuver throughout Andi's at the Pier;

iii. Defendants fail to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the retail store shopping aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

iv. Defendants have ineffective policies, practices, or procedures that ensures the accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied

services, segregated, or otherwise treated differently than other individuals without disabilities;

    **v.** Defendants provide shelves displaying merchandise that is for sale to the public to able-bodied individuals, but fails to provide non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals by failing to provide ADA accessible display shelves displaying merchandise that is for sale;

**g)** Defendants provide a sales/service counter at Andi's at the Pier for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following failures of Defendants:

    **A.** The sales/service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

**i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

**ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing sales/service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

**i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided

underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. Defendants fail to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

h) Defendants provide dressing rooms for able-bodied individuals at Andi's at the Pier, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities,

which includes but is not limited to the following failures of Defendants:

    **i.** The existing purported accessible dressing room fails to conform to the ADA Standards for Accessible Design;

    **ii.** Defendants fail to provide at least five percent (5%), but no less than one in each cluster, ADA accessible dressing rooms;

    **iii.** There is no signage displaying the International Symbol of Accessibility indicating an interior space within the dressing room as ADA accessible;

    **iv.** There is not at least one ADA accessible dressing room that provides the required maneuvering clearance at the dressing room door;

    **v.** There is not at least one ADA accessible dressing room that provides a bench with a back support and/or is affixed to the wall;

    **vi.** The dressing room fails to provide a bench with the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

vii. The dressing room fails to provide a bench that meets the minimum required length of 42 inches;

viii. There is not at least one ADA accessible dressing room that has a bench seat that is 20 inches deep minimum and 24 inches deep maximum;

ix. There is not at least one ADA accessible dressing room that has a bench that is 17 inches minimum and 19 inches maximum above the finished floor;

x. There is not at least one ADA accessible dressing room in each cluster that has the required t-shaped turning space which includes but is not limited to not providing the required 30x48 inches of clear floor space beyond the arc of the door swing;

xi. The coat hook exceeds the maximum allowed height of 48 inches above the finished floor;

xii. The clothing rod exceeds the maximum allowed height of 48 inches above the finished floor;

xiii. Defendants fail to maintain the accessible features of the dressing room that are required to be readily accessible to and usable by individuals with disabilities;

## CANDY MAKER CANDY STORE

**i)** The front entrance floor mat is not stable, firm, or otherwise secured to the floor which prohibits wheelchair users from being able to fully and equally access the goods, services, privileges, advantages, or accommodations at the facility;

**j)** Defendants provide candy self-service counters for merchandise and other items for able-bodied individuals in the Candymaker store, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the same experience afforded to individuals without disabilities;

    **A.** The self-service counters fail to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be afforded the opportunity to make a parallel approach to the counter;

        **i.** There is no 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor which prohibits individuals with disabilities from being afforded the same

level of convenience as individuals without disabilities;

ii. There is no clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter which prohibits individuals with disabilities from being afforded the same level of convenience as individuals without disabilities;

B. The self-service counters fail to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach which prohibits individuals with disabilities from having the same opportunity to

benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities,

privileges, advantages, or accommodations as individuals without disabilities;

C. The merchandise on the counters are arranged so that individuals with disabilities cannot fully an independently access the items which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

D. Defendants current practice on maintaining the merchandise for guests segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counters which prohibits individuals with disabilities from the full and equal enjoyment of the goods and services at the facility;

E. Defendants fail to maintain the accessible features at the self-service counters that are required to be readily accessible to and usable by individuals with disabilities which denies individuals with disabilities the full and equal enjoyment to participate in or benefit from, the

goods, services, facilities, privileges, advantages, or accommodations that is the same experience offered to able bodied individuals;

k) Defendants provide a check-out counter for able-bodied individuals in the Candymaker store, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    A. The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

        i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

        ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendants fail to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

**l)** Defendants provide a fudge selection counter for able-bodied individuals in the Candymaker store, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**A.** The fudge selection counter fails to provide a minimum of 36 inches of clear counter surface for individuals with

disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing fudge selection counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the fudge selection counter that extends the same depth as the non-accessible portion of the fudge selection counter;

D. Defendants locate merchandise buckets within the clear floor space at the fudge selection counter and consequently obstructs the required clear floor space at the sales/service counter, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use and access the fudge selection counter;

E. Defendants fail to maintain the accessible features at the fudge selection counter that are required to be readily accessible to and usable by individuals with disabilities;

**F.** Defendants provide self-service candy dispensers for able-bodied individuals to look through the colorful assortment of candies, independently view, create, and select creative combinations of candies and among other services, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of the self-service candy dispensers;

## CARTERS/OSHKOSH B'GOSH

**m)** Defendants provide an accessible route to and throughout the shopping retail aisles for able-bodied individuals at Carters/Oshkosh B'gosh, but fails to provide an ADA accessible route to and throughout the retail shopping aisle in the facility for individuals with disabilities which prohibits individuals with disabilities from the full and equal opportunity to access the goods and services at the Carters/Oshkosh B'gosh, including but not limited to the following failures of Defendants:

i.  Throughout the accessible route there is merchandise that is for sale to the public that obstructs the required 36 inches of clear floor space on the accessible route which prohibits individuals with disabilities to have the same shopping experience as individuals without disabilities;

ii.  Defendants locate its merchandise display tables and clothing racks within the clear floor or ground space of the accessible route and consequently obstructs the required clear floor space on the accessible route, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to maneuver throughout the facility;

iii.  Defendants fail to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the retail store shopping aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

iv.  Defendants have ineffective policies, practices, or procedures that ensures the accessible route is readily

accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

n) Defendants provide a check-out counter for able-bodied individuals at Carters/Oshkosh B'gosh provide a check-out counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    A. The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

        i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii.    There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.**  The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    i.    There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    ii.    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    iii.    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above

the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. Defendants provide a point of sale machine to transact business at the check-out counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

F. Defendants locate merchandise within the counter surface and consequently obstructs the required clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the check-out counter;

**G.** Defendants locate merchandise buckets within the clear floor space at the check-out counter and consequently obstructs the required clear floor space at the check-out counter, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use and access the sales/service counter;

**H.** Defendants fail to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

**o)** Defendants provide display counters for merchandise and other items for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the same experience afforded to individuals without disabilities;

**A.** The display counters fail to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be afforded the opportunity to make a parallel approach to the counter;

i. There is no 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor which prohibits individuals with disabilities from being afforded the same level of convenience as individuals without disabilities;

ii. There is no clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter which prohibits individuals with disabilities from being afforded the same level of convenience as individuals without disabilities;

B. The display counters fail to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counters which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

i.  There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

ii.  There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

iii.  There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface

that is measured a maximum of 36 inches above the finished floor positioned for a forward approach which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

C. The merchandise on the counters are arranged so that individuals with disabilities cannot fully an independently access the items which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

D. Defendants current practice on maintaining the merchandise for guests segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counters which prohibits individuals with disabilities from the full and equal enjoyment of the goods and services at the facility;

E.  Defendants fail to maintain the accessible features at the display counters that are required to be readily accessible to and usable by individuals with disabilities which denies individuals with disabilities the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is the same experience offered to able bodied individuals;

p)  Defendants provide a toilet room for able-bodied individuals at Carters/Oshkosh B'gosh, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i.  The flush control valve is located on the closed side of the water closet which fails to be properly located on the transfer side of the water closet;

ii.  There is not a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

iii. There is not a rear wall grab bar measured 36 inches long and located 24 inches on the open side of the toilet room and 12 inches on the closed side of the toilet room;

iv. The toilet seat cover dispenser fails to meet the required distance of 12 inches above the rear wall grab bar;

v. There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

vi. The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

vii. The paper towel dispenser exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the paper towel dispenser;

viii. The soap dispenser exceeds the maximum allowed height of 48 inches above the finished floor and prohibits individuals with disabilities from being afforded the opportunity to use the soap dispenser;

## SUNGLASS WORLD

**q)** Defendants provide a check-out counter for able-bodied individuals at Sunglass World, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**A.** The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

**i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

**ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with

disabilities to be able to make a forward approach to the counter;

    i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Sunglass World fails to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

**r)** Defendants provide self-service glass displays for able-bodied individuals to look through the various assortment of glasses, independently view and select glasses at Sunglass World, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of the self-service glasses display;

**s)** Defendants provide a self-service hat display for able-bodied individuals to look through the various hats, independently view and select hats at Sunglass World, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a

good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit of the self-service hat display;

## DÉJÀ VU

t)  Defendants provide a check-out counter for able-bodied individuals at Deja Vu, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A.  The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

i.  There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B. The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above

the finished floor positioned for a forward approach;

    **C.** There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

    **D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

    **E.** Defendants locate merchandise within the counter surface and consequently obstructs the required clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the check-out counter;

    **F.** Defendants fail to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

**u)** Defendants provides lounge seating chairs for able-bodied individuals to sit and relax while shopping at Deja Vu, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit

from, a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    i.    There is no ADA accessible lounge seating bench that measures the minimum required length of 42 inches long minimum;

    ii.    There is no ADA accessible lounge seating bench that measures the required height of 17-19 inches above the finished floor;

    iii.    There is no ADA accessible lounge seating bench that is 20 inches deep minimum and 24 inches deep maximum;

    iv.    There is no ADA accessible lounge seating bench that provides a back support and/or is affixed to a wall;

**v)**    Defendants provide dressing rooms for able-bodied individuals at Deja Vu, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The existing purported accessible dressing room fails to conform to the ADA Standards for Accessible Design;

ii. Deja Vu fails to provide at least five percent (5%), but no less than one in each cluster, ADA accessible dressing rooms;

iii. The curtain leading into the dressing room requires tight grasping, pinching and/or twisting of the wrist;

iv. There is no signage displaying the International Symbol of Accessibility indicating an interior space within the dressing room as ADA accessible;

v. There is not at least one ADA accessible dressing room that provides a bench with a back support and/or is affixed to the wall;

vi. The dressing room fails to provide a bench with the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

vii. There is not at least one dressing room that provides a bench that meets the minimum required length of 42 inches;

viii. There is not at least one ADA accessible dressing room that has a bench seat that is 20 inches deep minimum and 24 inches deep maximum;

ix. There is not at least one ADA accessible dressing room that has a bench that is 17 inches minimum and 19 inches maximum above the finished floor;

x. There is not at least one ADA accessible dressing room in each cluster that has the required t-shaped turning space;

xi. There is not at least one ADA accessible dressing room in each cluster that has the required circular turning space;

xii. The clothing hooks exceed the maximum allowed height of 48 inches above the finished floor;

xiii. The mirror within the dressing room exceeds the maximum allowed height of 35 inches AFF;

xiv. Defendants fail to maintain the accessible features of the dressing room that are required to be readily accessible to and usable by individuals with disabilities;

## MARBLE SLAB

w) Defendants provide a sales/service counter for able-bodied individuals at Marble Slab, but fails to afford non-able-bodied individuals the same

opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A. The sales/service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B. The existing sales/service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above

the finished floor positioned for a forward approach;

    ii.  There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    iii.  There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. Defendants locate merchandise within the counter surface and consequently obstructs the required clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the sales/service counter;

F. Defendants fail to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

x) Defendants provide a food selection counter for able-bodied individuals at Marble Slab, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A. The food selection counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing food selection counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided

underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the food selection counter that extends the same depth as the non-accessible portion of the food selection counter;

**D.** Defendants locate merchandise within the counter surface and consequently obstructs the required clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the food selection counter;

**E.** Defendants fail to maintain the accessible features at the food selection counter that are required to be readily accessible to and usable by individuals with disabilities;

**y)** Defendants provides a toilet room for able-bodied individuals at Marble Slab, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping

experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i.   There is no signage displaying the International Symbol of Accessibility on the latch side of the door indicating the toilet room is ADA accessible;

ii.  The toilet room fails to provide the required 60x56 inches of clear floor or ground space around the water closet;

iii. Defendants locate a trash can around the water closet and consequently obstructs the clear floor or ground space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the water closet;

iv.  The flush control valve fails to be properly located on the transfer side of the water closet;

v.   The rear wall grab bar fails to be located so that 12 inches is provided on the closed side of the toilet room and 24 inches provided on the open side of the toilet room;

vi.  The side wall grab bar exceeds the maximum allowed distance from the rear wall of 12 inches;

vii.  There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to approach the lavatory and position in a forward approach to use the lavatory;

viii.  Defendants locate a trash can around the lavatory sink and consequently obstructs the required knee and toe clearance which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the lavatory sink;

ix.  The paper towel dispensers require the use of tight grasping, twisting, and/or pinching of the wrist which prohibits individuals with disabilities from being afforded the opportunity to dry their hands;

x.  Defendants locate a trash can around the paper towel dispenser and consequently obstructs the required clear floor or ground space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the paper towel dispenser;

xi.  The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

## PINK NARCISSUS

**z)** Defendants provide a check-out counter for able-bodied individuals at Pink Narcissus, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**A.** The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

**i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

**ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with

disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendants fail to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

**aa)** The front entrance floor mat is not stable, firm, or otherwise secured to the floor;

**bb)** Defendants provide lounge seating chairs for able-bodied individuals to sit and relax while shopping at Pink Narcissus, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**i.** There is no ADA accessible lounge seating that measures the minimum required length of 42 inches long minimum;

ii.  There is no ADA accessible lounge seating that measures the required height of 17-19 inches above the finished floor;

iii. There is no ADA accessible lounge seating that is 20 inches deep minimum and 24 inches deep maximum;

iv.  There is no ADA accessible lounge seating that provides back support and/or is affixed to a wall;

cc) Defendants provide dressing rooms for able-bodied individuals at Pink Narcissus, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i.  The existing purported accessible dressing room fails to conform to the ADA Standards for Accessible Design;

ii. Defendants fail to provide at least five percent (5%), but no less than one in each cluster, ADA accessible dressing rooms;

iii. There is no signage displaying the International Symbol of Accessibility indicating an interior space within the dressing room as ADA accessible;

iv. The dressing room fails to provide the required maneuvering clearance at the dressing room door to enter the dressing room;

v. Defendants locate a barrel and other items outside of the dressing room and consequently obstructs the maneuvering clearance which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to enter the dressing room;

vi. The dressing room fails to provide the required perpendicular clear floor or ground space at the dressing room door to exit the dressing room;

vii. Defendants locate a seat within the dressing room and consequently obstructs the perpendicular clear floor or ground space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to exit the dressing room;

viii. The dressing room fails to provide the required 30x48 inches of clear floor space beyond the arch of the door for a wheel chair user to maneuver into the dressing room;

ix. The dressing room bench fails to provide the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

x. The clothing rod above the bench on the side wall exceeds the maximum allowed obstructed height of 44 inches above the finished floor;

xi. The secondary clothing rod above the seating chair exceeds the maximum allowed obstructed height of 44 inches above the finished floor;

xii. The light switch above exceeds the maximum allowed unobstructed height of 48 inches above the finished floor;

## POMPANO JOE'S

dd) Defendants provide a hostess counter for able-bodied individuals at Pompano Joe's, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience

afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A. The hostess counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B. The existing hostess counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the hostess counter that extends the same depth as the non-accessible portion of the hostess counter;

D. Defendants fail to maintain the accessible features at the hostess counter that are required to be readily accessible to and usable by individuals with disabilities;

ee) Defendants provide several types of seating in the dining area downstairs for able-bodied individuals in Pompano Joe's, but fails to provide that same level of service to individuals without disabilities,

which segregates and relegates individuals with disabilities to an inferior benefit of Pompano Joe's;

ff) Defendants provide a bar for able-bodied individuals downstairs, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

   i. There is no ADA accessible route to the bar which prohibits disabled individuals from being afforded the opportunity to dine in the elevated table area;

   ii. The top surface of the bar exceeds the maximum allowed height of 34 inches above the finished floor;

   iii. The bar fails to provide at least five percent (5%) ADA accessible seating;

   iv. The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

**v.** The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

**vi.** There is not a 30-inch-wide minimum clear counter surface available for an individual with a disability to be afforded the opportunity to approach the counter surface;

**vii.** Defendants fail to maintain the accessible features at bar counter that are required to be readily accessible to and usable by individuals with disabilities;

**gg)** Defendants provide dining tables for able-bodied individuals in the dining area downstairs, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**i.** The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

**ii.** The seating tables fails to provide at least five percent (5%) ADA accessible seating;

iii. The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

iv. The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

v. There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

vi. Defendants fail to maintain the accessible features at seating tables that are required to be readily accessible to and usable by individuals with disabilities;

hh) Defendants provide dining tables for able-bodied individuals at the outside dining area downstairs, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

ii. The seating tables fails to provide at least five percent (5%) ADA accessible seating;

iii. The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

iv. The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

v. There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

vi. Defendants fail to maintain the accessible features at seating tables that are required to be readily accessible to and usable by individuals with disabilities;

ii) Defendants provide several types of seating at the outside dining area upstairs for able-bodied individuals in Pompano Joe's, but fails to provide that same level of service to individuals without disabilities,

which segregates and relegates individuals with disabilities to an inferior benefit of Pompano Joe's;

**jj)** Defendants provide a bar for able-bodied individuals upstairs, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The top surface of the bar exceeds the maximum allowed height of 34 inches above the finished floor;

    **ii.** The bar fails to provide at least five percent (5%) ADA accessible seating;

    **iii.** The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **iv.** The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

**v.** There is not a 30-inch-wide minimum clear counter surface available for an individual with a disability to be afforded the opportunity to approach the counter surface;

**vi.** Defendants fail to maintain the accessible features at bar counter that are required to be readily accessible to and usable by individuals with disabilities;

**kk)** Defendants provide dining tables for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**i.** The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

**ii.** The seating tables fails to provide at least five percent (5%) ADA accessible seating;

**iii.** The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **iv.** The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the bar;

    **v.** There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

    **vi.** Defendants fail to maintain the accessible features at seating tables that are required to be readily accessible to and usable by individuals with disabilities;

**ll)** Defendants provides elevated seating at the outside dining area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** There is no ADA accessible route to the elevated seating area which prohibits disabled individuals from being afforded the opportunity to dine in the elevated table area;

ii. There are not at least 5% ADA accessible seating tables in the elevated area that provides tables 28-34 inches above the finished floor;

iii. The seating tables fails to provide at least five percent (5%) ADA accessible seating;

iv. There are not at least 5% ADA accessible seating tables in the elevated area that provides the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the elevated area;

v. There are not at least 5% ADA accessible seating tables in the elevated area that provides the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the elevated area;

vi. There are not at least 5% ADA accessible seating tables in the elevated area that provides a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

vii. Defendants fail to maintain the accessible features at the elevated seating area that are required to be readily accessible to and usable by individuals with disabilities;

mm) The floor mats throughout the restaurant are not stable, firm, or otherwise secured to the floor;

nn) There is signage for able-bodied individuals designating a permanent interior space within the "restroom area" as the womens restroom however there is no signage displaying the international symbol of accessibility identifying the interior space within the restroom area as ADA accessible;

oo) Defendants provide a wheelchair accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The toilet compartment door fails to have door pulls located on both sides;

ii. The toilet compartment door is not self-closing;

iii. The toilet compartment door locking mechanism requires tight grasping, twisting, and/or pinching of the wrist;

iv. The centerline of the water closet exceeds the maximum allowed distance from the side wall of 16-18 inches;

v. Defendants fail to provide a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

vi. The rear wall grab bar is not properly located 12 inches on the closed side of the toilet room and 24 inches on the transfer side;

vii. The baby changing table measures 51.88 inches above the finished floor which exceeds the maximum allowed height of 48 inches above the finished floor;

viii. The trash can obstructs the required clear floor space around water closet for disabled to maneuver and transfer onto the water closet;

ix. The lavatory sink is measured at 55.5 inches from the side wall which prohibits individuals with disabilities from having the opportunity to transfer onto the water closet;

**x.** The lavatory sink drain pipes are not properly insulated or otherwise configured to protect against contact;

**xi.** The paper towel dispenser measures 45.03 inches above the finished floor which exceeds the maximum allowed height of 44 inches above the finished floor;

**xii.** The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

**xiii.** Defendants fail to maintain the accessible features of the toilet room that are required to be readily accessible to and usable by individuals with disabilities;

**pp)** Defendants provide a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**i.** There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

    **ii.** The lavatory sink does not provide the required knee clearance for a wheelchair user to approach the sink;

    **iii.** The soap dispenser measures 43.90 inches above the finished floor which exceeds the maximum allowed height of 44 inches above the finished floor;

    **iv.** The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

    **v.** Defendants fail to maintain the accessible features of the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

## RON JON SURF SHOP

**qq)** Defendants provide a check-out counter for able-bodied individuals nearest the rear entrance at Ron Jon, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **A.** The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with

disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

        iii.  There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendants fail to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

**rr)** Defendants provide a check-out counter for able-bodied individuals nearest the dressing rooms at Ron Jon, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation

that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **A.** The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

        **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

        **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

    **B.** The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

        **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above

the finished floor positioned for a forward approach;

    ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. Defendants fail to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

ss) Defendants provide dressing rooms for able-bodied individuals at Ron Jon, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The existing purported accessible dressing room fails to conform to the ADA Standards for Accessible Design;

ii. There is no informational signage directing disabled individuals to the accessible dressing room;

iii. There is no signage displaying the International Symbol of Accessibility indicating an interior space within the dressing room as ADA accessible;

iv. Defendants fail to provide at least five percent (5%), but no less than one in each cluster, ADA accessible dressing rooms;

v. There is not at least one ADA accessible dressing room that provides a bench with a back support and/or is affixed to the wall;

vi. The dressing room bench fails to provide the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

vii. There is not at least one dressing room bench that meets the minimum required length of 42 inches;

viii. There is not at least one ADA accessible dressing room that has a bench seat that is 20 inches deep minimum and 24 inches deep maximum;

ix. There is not at least one ADA accessible dressing room that has a bench that is 17 inches minimum and 19 inches maximum above the finished floor;

x. The clothing hooks exceed the maximum allowed height of 48 inches above the finished floor;

xi. Defendants fail to maintain the accessible features of the dressing room that are required to be readily accessible to and usable by individuals with disabilities;

**tt)** Defendants fail to provide stable, firm or otherwise secured to the floor mats throughout the store, which prohibits wheelchair users from being able to fully and equally access the goods, services, privileges, advantages, or accommodations at the establishment;

**uu)** Defendants provide lounge seating benches for able-bodied individuals to sit and relax at Ron Jon, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit;

  **i.** There is no ADA accessible lounge seating bench that measures the minimum required length of 42 inches long minimum;

  **ii.** There is no ADA accessible lounge seating bench that measures the required height of 17-19 inches above the finished floor;

  **iii.** There is no ADA accessible lounge seating bench that is 20 inches deep minimum and 24 inches deep maximum;

**iv.** There is no ADA accessible lounge seating bench that provides a back support and/or is affixed to a wall;

**v.** Defendants fail to maintain the accessible features of the dressing room that are required to be readily accessible to and usable by individuals with disabilities;

## RUNWAY COLLECTION

**vv)** Defendants fail to provide a stable, firm or otherwise secured to the floor mat at the entrance to the store, which prohibits wheelchair users from being able to fully and equally access the goods, services, privileges, advantages, or accommodations at the establishment;

**ww)** Defendants provide a sales/service counter for able-bodied individuals at Runway Collection, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**A.** The sales/service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

  **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

  **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing sales/service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

  **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

  **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

  **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided

underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. Defendants locate items within the counter surface and consequently obstructs the required clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the sales/service counter;

F. Defendants fail to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

**xx)** Defendants provide dressing rooms for able-bodied individuals at Runway Collection, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

   i. The existing purported accessible dressing room fails to conform to the ADA Standards for Accessible Design;

   ii. Defendants fail to provide at least five percent (5%), but no less than one in each cluster, ADA accessible dressing rooms;

   iii. There is not at least one ADA accessible dressing room that provides a bench with a back support and/or is affixed to the wall;

   iv. The dressing room bench fails to provide the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

   v. There is not at least one dressing room bench that meets the minimum required length of 42 inches;

vi. There is not at least one ADA accessible dressing room that has a bench seat that is 20 inches deep minimum and 24 inches deep maximum;

vii. There is not at least one ADA accessible dressing room that has a bench that is 17 inches minimum and 19 inches maximum above the finished floor;

viii. The clothing hooks exceeds the maximum allowed height of 48 inches above the finished floor;

ix. The dressing rooms fail to provide the required 60 inch diameter circular turning space for a wheelchair user to maneuver inside the room;

x. The dressing rooms fail to provide the required 60 inch t-shaped turning space for a wheelchair user to maneuver inside the room;

xi. When exiting the dressing room there is not 18 inches of latch side clearance on the pull side of the door for a wheelchair user to be able to approach the door;

xii. Defendants fail to maintain the accessible features of the dressing room that are required to be readily accessible to and usable by individuals with disabilities;

**yy)** Defendants provide an accessible route to and throughout the shopping retail aisles for able-bodied individuals at Runway Collection, but fails to provide an ADA accessible route to and throughout the retail shopping aisles for individuals with disabilities, and therefore fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** Throughout the accessible route there is merchandise that is for sale to the public that obstructs the required 36 inches of clear floor space on the accessible route;

    **ii.** Defendants locate merchandise display racks and display tables within the required clear floor or ground space of the accessible route which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to maneuver through Runway Collection;

**iii.** Defendants fail to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the retail store shopping aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

**iv.** Defendants have ineffective policies, practices, or procedures that ensures the accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

## SALT LIFE/LATITUDE 29

**zz)** Defendants provide a sales/service counter for able-bodied individuals at Salt Life/Latitude 29, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**A.** The sales/service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

   **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

   **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing sales/service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

   **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

   **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that

is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendants provide a point of sale machine to transact business at the sales/service counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

**F.** Defendants locate items within the counter surface and consequently obstructs the required clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the sales/service counter;

**G.** Defendants fail to provide stable, firm or otherwise secured the floor mats at the sales/service counter, which prohibits wheelchair users from being able to fully and equally access the goods, services, privileges, advantages, or accommodations at the establishment;

**H.** Defendants fail to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

**aaa)** Defendants provide dressing rooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The existing purported accessible dressing room fails to conform to the ADA Standards for Accessible Design;

ii. There is no informational signage directing disabled individuals to the accessible dressing room;

iii. Defendants fail to provide at least five percent (5%), but no less than one in each cluster, ADA accessible dressing rooms;

iv. There is not at least one ADA accessible dressing room that provides a bench with a back support and/or is affixed to the wall;

v. The dressing rooms fail to provide the required 60 inch diameter circular turning space for a wheelchair user to maneuver inside the room;

vi. The dressing rooms fail to provide the required 60 inch t-shaped turning space for a wheelchair user to maneuver inside the room;

vii. The dressing room bench fails to provide the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

viii. There is not at least one dressing room bench that meets the minimum required length of 42 inches;

ix. There is not at least one ADA accessible dressing room that has a bench seat that is 20 inches deep minimum and 24 inches deep maximum;

x. There is not at least one ADA accessible dressing room that has a bench that is 17 inches minimum and 19 inches maximum above the finished floor;

xi. The clothing hooks exceeds the maximum allowed height of 48 inches above the finished floor;

xii. The dressing room door locking mechanism requires the use of tight grasping, pinching, or twisting of the wrist;

xiii. The dressing room door operation mechanism requires the use of tight grasping, pinching, or twisting of the wrist;

xiv. When exiting the dressing room there is not 18 inches of latch side clearance on the pull side of the door for a wheelchair user to be able to approach the door;

xv. Defendants fail to maintain the accessible features of the dressing room that are required to be readily accessible to and usable by individuals with disabilities;

**bbb)** Defendants provide an accessible route to and throughout the shopping retail aisles for able-bodied individuals at Salt Life/Latitude 29 but fails to provide an ADA accessible route to and throughout the retail shopping aisles for individuals with disabilities, and therefore fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** Throughout the accessible route there is merchandise that is for sale to the public that obstructs the required 36 inches of clear floor space on the accessible route;

    **ii.** Defendants locate merchandise display racks and display tables within the required clear floor or ground space of the accessible route which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to maneuver through the facility;

    **iii.** Defendants fail to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in

operable working condition the features of the purported accessible route to and throughout the retail store shopping aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

iv. Defendants have ineffective policies, practices, or procedures that ensures the accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

v. Defendants fail to provide stable, firm or otherwise secured to the floor mats at the entrances, which prohibits wheelchair users from being able to fully and equally access the goods, services, privileges, advantages, or accommodations at the establishment;

## SCHLOTZSKY'S

ccc) Defendants provide an ordering counter for able-bodied individuals at Schlotzsky's, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility,

privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A. The ordering counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

   i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

   ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B. The existing ordering counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

   i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above

the finished floor positioned for a forward approach;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the ordering counter that extends the same depth as the non-accessible portion of the ordering counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

E. Defendants locate items within the counter surface and consequently obstructs the required clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the ordering counter;

F. Defendants fail to maintain the accessible features at the ordering counter that are required to be readily accessible to and usable by individuals with disabilities;

ddd) Defendants provide a self-service tray return counter for able-bodied individuals at Schlotzsky's, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A. The self-service tray return counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

      i.     There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

      ii.    There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.**  The existing self-service tray return counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

      i.     There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

      ii.    There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

      iii.   There is no clear floor space that is at least 30 inches wide x 48 inches long provided

underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **C.** Defendants fail to maintain the accessible features of the self-service tray return counter that are required to be readily accessible to and usable by individuals with disabilities;

**eee)** Defendants provide a self-service counter with condiments, beverages and other items for able-bodied individuals at Schlotzsky's, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **A.** The self-service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

i.   There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

ii.  There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B.  The existing self-service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

i.   There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii.  There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

      **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the self-service counter that extends the same depth as the non-accessible portion of the self-service counter;

**D.** The condiments, beverages and other items on the self-service counter are arranged so that individuals with disabilities cannot fully an independently access the items;

**E.** Defendants stock the condiments and other items on top of the self-service counter for guests and consequently segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve items maintained on the counter which has a discriminatory effect in practice of prohibiting disabled

individuals from the full and equal opportunity to use the self-service counter;

> **F.** Defendants fail to maintain the accessible features at the self-service counter that are required to be readily accessible to and usable by individuals with disabilities;

fff) Defendants fail to provide stable, firm or otherwise secured to the floor mats throughout the facility, which prohibits wheelchair users from being able to fully and equally access the goods, services, privileges, advantages, or accommodations at the establishment;

ggg) Defendants provide several types of seating for able-bodied individuals in Schlotzsky's, but fails to provide that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to an inferior benefit of Schlotzsky's;

hhh) Defendants provide dining and booth seating tables for able-bodied individuals at Schlotzsky's, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without

disabilities, which includes but is not limited to the following failures of Defendants:

i. The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

ii. The seating tables fails to provide at least five percent (5%) ADA accessible seating;

iii. The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit in the dining area;

iv. The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit in the dining area;

v. There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

vi. Defendants fail to maintain the accessible features at seating tables that are required to be readily accessible to and usable by individuals with disabilities;

iii)   Defendants provide a toilet room for able-bodied individuals in Schlotzsky's, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

  i.   There is no signage displaying the International Symbol of Accessibility indicating an interior space within the toilet room as ADA accessible;

  ii.  The lavatory sink is measured at 34.03 inches from the side wall which prohibits individuals with disabilities from having the opportunity to transfer onto the water closet;

  iii. There is not at least one ADA accessible lavatory sink that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

  iv.  There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to position for a forward approach;

v. The bottom reflecting surface of the mirror is measured 44.84 inches above the finished floor;

vi. The soap dispenser is measured at 49.65 inches above the finished floor which exceeds the maximum allowed obstructed reach range of 44 inches above the finished floor;

vii. The paper towel dispenser is measured at 51.87 inches above the finished floor which exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

viii. The centerline of the water closet exceeds the maximum allowed distance from the side wall of 16-18 inches;

ix. Defendants locate the toilet paper in the required top gripping surface above the side wall grab bar which fails to measure the minimum required height of 12 inches;

x. Defendants locate the toilet paper on top of the side wall grab bar and consequently obstructs the required top gripping surface which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to transfer on or off the water closet;

xi. The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

xii. The trash can obstructs the required maneuvering clearance for disabled to maneuver out of the toilet room;

xiii. Defendants locate the trash can beside the toilet room door and consequently obstructs the required maneuvering clearance which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to maneuver out of the toilet room;

xiv. Defendants fail to maintain the accessible features within the toilet room that are required to be readily accessible to and usable by individuals with disabilities;

## SMOOTHIE KING

jjj) Defendants provide an ordering counter for able-bodied individuals in Smoothie King, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

**A.** The ordering counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing ordering counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that

is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.**    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.**  There is no ADA accessible portion of the ordering counter that extends the same depth as the non-accessible portion of the ordering counter;

**D.**  There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.**  Defendants fail to maintain the accessible features at the ordering counter that are required to be readily accessible to and usable by individuals with disabilities;

**kkk)** Defendants provide an order pick-up counter for able-bodied individuals in Smoothie King, but fails to afford non-able-bodied

individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **A.** The order pick-up counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

        **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

        **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

    **B.** The existing order pick-up counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

C. There is no ADA accessible portion of the order pick-up counter that extends the same depth as the non-accessible portion of the order pick-up counter;

D. There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum

above the finished floor that allows for the required knee and toe clearance;

    **E.**  Defendants fail to maintain the accessible features at the order pick-up counter that are required to be readily accessible to and usable by individuals with disabilities;

**III)**  Defendants provide a toilet room for able-bodied individuals in Smoothie King, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.**  The lavatory sink is measured at 52.03 inches from the side wall which prohibits individuals with disabilities from having the opportunity to transfer onto the water closet;

    **ii.**  There is not at least one ADA accessible lavatory sink that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

iii. The soap dispenser is measured at 53.75 inches above the finished floor which exceeds the maximum allowed obstructed reach range of 44 inches above the finished floor;

iv. The paper towel dispenser is measured at 54.68 inches above the finished floor which exceeds the maximum allowed obstructed reach range of 44 inches above the finished floor;

v. The centerline of the water closet exceeds the maximum allowed distance from the side wall of 16-18 inches;

vi. Defendants fail to provide a rear wall grab bar measuring 33-36 inches above the finished floor;

vii. There is not a rear wall grab bar measured 36 inches long and located 24 inches on the open side of the toilet room and 12 inches on the closed side of the toilet room;

viii. Defendants fail to provide a side wall grab bar measuring 33-36 inches above the finished floor;

ix. Defendants fail to provide a side wall grab bar measured 42 inches long located 12 inches maximum from the rear wall and extending 54 inches measured from the rear wall;

x. The trash can obstructs the required maneuvering clearance for disabled to maneuver out of the toilet room;

xi. Defendants locate the trash can beside the toilet room door and consequently obstructs the required maneuvering clearance which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to maneuver out of the toilet room;

xii. Defendants fail to maintain the accessible features within the toilet room that are required to be readily accessible to and usable by individuals with disabilities;

mmm) Defendants provide an accessible route to the toilet room for able-bodied individuals at Smoothie King, but fails to provide an ADA accessible route to the toilet room for individuals with disabilities, and therefore fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The trash can obstructs the required 36 inches of clear floor space on the accessible route to the toilet room;

ii. Defendants locate a trash can within the required clear floor or ground space of the accessible route which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the toilet room;

iii. Defendants fail to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to the toilet room so that the goods and services are readily accessible to and usable by individuals with disabilities;

iv. Defendants have ineffective policies, practices, or procedures that ensures the accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without disabilities;

**THE FLORIDA HOUSE**

nnn) Defendants provide a sales/service counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    A. The sales/service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

        i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

        ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

    B. The existing sales/service counter fails to provide a minimum of 30 inches of clear counter surface for

individuals with disabilities to be able to make a forward approach to the counter;

     **i.**  There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

     **ii.**  There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

     **iii.**  There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.**  There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendants provide a point of sale machine to transact business at the sales/service counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

**F.** Defendants locate items within the counter surface and consequently obstructs the required clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the sales/service counter;

**G.** Defendants fail to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

**ooo)** Defendants provide dressing rooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege,

advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The existing purported accessible dressing room fails to conform to the ADA Standards for Accessible Design;

ii. There is no signage displaying the International Symbol of Accessibility indicating an interior space within the dressing room as ADA accessible;

iii. Defendants fail to provide at least five percent (5%), but no less than one in each cluster, ADA accessible dressing rooms;

iv. There is not at least one ADA accessible dressing room that provides a bench with a back support and/or is affixed to the wall;

v. The dressing room bench fails to provide the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

vi. There is not at least one dressing room bench that meets the minimum required length of 42 inches;

vii. There is not at least one ADA accessible dressing room that has a bench seat that is 20 inches deep minimum and 24 inches deep maximum;

viii. There is not at least one ADA accessible dressing room that has a bench that is 17 inches minimum and 19 inches maximum above the finished floor;

ix. The clothing hooks exceeds the maximum allowed height of 48 inches above the finished floor;

x. The door locking mechanism exceeds the maximum allowed height of 48 inches above the finished floor;

xi. Defendants fail to maintain the accessible features of the dressing room that are required to be readily accessible to and usable by individuals with disabilities;

## UNIQUE BOUTIQUE

ppp) Defendants provide a sales/service counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A. The sales/service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B. The existing sales/service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that

is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **iii.**    There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendants locate items within the counter surface and consequently obstructs the required clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the sales/service counter;

F. Defendants fail to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

qqq) Defendants provide dressing rooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The existing purported accessible dressing room fails to conform to the ADA Standards for Accessible Design;

ii. Defendants fail to provide at least five percent (5%), but no less than one in each cluster, ADA accessible dressing rooms;

iii. There is not at least one ADA accessible dressing room that provides a bench with a back support and/or is affixed to the wall;

iv. The dressing rooms fail to provide the required 60 inch diameter circular turning space for a wheelchair user to maneuver inside the room;

v. The dressing rooms fail to provide the required 60 inch t-shaped turning space for a wheelchair user to maneuver inside the room;

vi. The dressing room bench fails to provide the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

vii. There is not at least one dressing room bench that meets the minimum required length of 42 inches;

viii. There is not at least one ADA accessible dressing room that has a bench seat that is 20 inches deep minimum and 24 inches deep maximum;

ix. There is not at least one ADA accessible dressing room that has a bench that is 17 inches minimum and 19 inches maximum above the finished floor;

x. The clothing hooks exceeds the maximum allowed height of 48 inches above the finished floor;

xi. The dressing room door locking mechanism requires the use of tight grasping, pinching, or twisting of the wrist;

xii. The dressing room door operation mechanism requires the use of tight grasping, pinching, or twisting of the wrist;

xiii. When exiting the dressing room there is not 18 inches of latch side clearance on the pull side of the door for a wheelchair user to be able to approach the door;

xiv. Defendants fail to maintain the accessible features of the dressing room that are required to be readily accessible to and usable by individuals with disabilities;

rrr) Defendants provide an accessible route to and throughout the shopping retail aisles for able-bodied individuals at Unique Boutique but fails to provide an ADA accessible route to and throughout the retail shopping aisles for individuals with disabilities, and therefore fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i.  Throughout the accessible route there is merchandise that is for sale to the public that obstructs the required 36 inches of clear floor space on the accessible route;

ii.  Defendants locate merchandise display racks and display tables within the required clear floor or ground space of the accessible route which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to maneuver through Unique Boutique;

iii.  Defendants fail to have or otherwise fails to enforce its policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible route to and throughout the retail store shopping aisles so that the goods and services are readily accessible to and usable by individuals with disabilities;

iv.  Defendants have ineffective policies, practices, or procedures that ensures the accessible route is readily accessible to and usable by individuals with disabilities so that no individual with a disability is excluded, denied

services, segregated, or otherwise treated differently than other individuals without disabilities;

## DILLARD'S PARKING

sss) Defendants provide parking spaces in front of Dillard's on the Dollar Tree side for able-bodied individuals, but fails to provide any ADA accessible parking spaces for non-able-bodied individuals, including but not limited to the following:

    i. There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches maximum above the finished floor or ground surface;

    ii. Defendants fail to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking structure;

    iii. There are no van accessible parking spaces located at the shortest accessible route to the entrance;

    iv. The purported accessible parking space on the left fails to provide an access aisle that meets the required width of 60 inches;

v. The purported accessible parking space on the left fails to provide an access aisle that connects to an accessible route to the facility entrance;

vi. The purported accessible parking space on the left fails to provide an accessible route from the parking lot to the facility entrance;

vii. The first purported accessible parking space on the right fails to provide an access aisle that meets the required width of 60 inches;

viii. Defendants fail to maintain the accessible features of the parking spaces that are required to be readily accessible to and usable by individuals with disabilities;

ttt) Defendants provide a curb ramp in front of Dillard's on the Dollar Tree side leading to the entrance for able-bodied individuals, but fails to provide any ADA accessible curb ramps for non-able-bodied individuals, including but not limited to the following:

i. The curb ramp has a running slope that exceeds the maximum allowed slope of 4.76 degrees (8.33%);

ii. The curb ramp has a left side flare that exceeds the maximum allowed slope of 5.71 degrees (10.00%);

iii. The curb ramp has a right side flare exceeds the maximum allowed slope of 5.71 degrees (10.00%);

iv. Defendants fail to maintain the accessible features at the curb ramp that are required to be readily accessible to and usable by individuals with disabilities;

uuu) Defendants provide parking spaces in front of Dillard's on the Dillard's only side for able-bodied individuals, but fails to provide any ADA accessible parking spaces for non-able-bodied individuals, including but not limited to the following:

i. There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches maximum above the finished floor or ground surface;

ii. Defendants fail to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking structure;

iii. There are no van accessible parking spaces located at the shortest accessible route to the entrance;

iv. The purported accessible parking space on the left fails to provide an access aisle that meets the required width of 60 inches;

v. The purported accessible parking space on the left fails to provide an access aisle that connects to an accessible route to the facility entrance;

vi. The purported accessible parking space on the left fails to provide an accessible route from the parking lot to the facility entrance;

vii. Defendants fail to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

vvv) Defendants provide parking spaces in front of Dillard's on the Torrid side for able-bodied individuals, but fails to provide any ADA accessible parking spaces for non-able-bodied individuals, including but not limited to the following:

i. There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches maximum above the finished floor or ground surface;

ii. Defendants fail to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking structure;

iii. There are no van accessible parking spaces located at the shortest accessible route to the entrance;

iv. The purported accessible parking space on the left fails to provide an access aisle that meets the required width of 60 inches;

v. The purported accessible parking space on the left fails to provide an access aisle that connects to an accessible route to the facility entrance;

vi. The purported accessible parking space on the left fails to provide an accessible route from the parking lot to the facility entrance;

vii. Defendants fail to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

## PARKING IN FRONT OF DOLLAR TREE

www) Defendants provide parking spaces in front of Dollar Tree for able-bodied individuals, but fails to provide any ADA accessible parking

spaces for non-able-bodied individuals, including but not limited to the following:

      i.  There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches maximum above the finished floor or ground surface;

     ii.  Defendants fail to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking structure;

   iii.  There are no van accessible parking spaces located at the shortest accessible route to the entrance;

   iv.  Defendants fail to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

**xxx)** Defendants provide a curb ramp in front of Dollar Tree for able-bodied individuals, but fails to provide any ADA accessible curb ramp for non-able-bodied individuals, including but not limited to the following:

      i.  The curb ramp has a running slope that exceeds the maximum allowed slope of 4.76 degrees (8.33%);

ii. The curb ramp has a left side flare that exceeds the maximum allowed slope of 5.71 degrees (10.00%);

iii. The curb ramp has a right side flare exceeds the maximum allowed slope of 5.71 degrees (10.00%);

iv. Defendants fail to maintain the curb ramp so that it is readily accessible to and usable by individuals with disabilities;

## PARKING IN FRONT OF MARSHALLS

yyy) Defendants provide parking spaces in front of Marshalls for able-bodied individuals, but fails to provide any ADA accessible parking spaces for non-able-bodied individuals, including but not limited to the following:

i. There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches maximum above the finished floor or ground surface;

ii. Defendants fail to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking structure;

iii. There are no van accessible parking spaces located at the shortest accessible route to the entrance;

iv. Defendants fail to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

## STREET PARKING

**zzz)** Defendants provide parking spaces in front of Torrid for able-bodied individuals, but fails to provide any ADA accessible parking spaces for non-able-bodied individuals, including but not limited to the following:

i. There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches maximum above the finished floor or ground surface;

ii. Defendants fail to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking structure;

iii. There are no van accessible parking spaces located at the shortest accessible route to the entrance;

iv. Defendants fail to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

v. The existing parking spaces fail to have ADA compliant adjacent access aisles;

middle> vi. The access aisle fails to connect to an accessible route from the parking lot to the facility entrance;

> vii. The purported accessible parking space to the left has a change in surface level;

**aaaa)** Defendants provides a curb ramp in front of the Torrid facility for able-bodied individuals, but fails to provide any ADA accessible curb ramp for non-able-bodied individuals, including but not limited to the following:

> i. The curb ramp has a running slope that exceeds the maximum allowed slope of 4.76 degrees (8.33%);

> ii. Defendants fail to maintain the accessible features at the curb ramp that are required to be readily accessible to and usable by individuals with disabilities;

**bbbb)** Defendants provide parking spaces in front of Victoria's Secret for able-bodied individuals, but fails to provide any ADA accessible parking spaces for non-able-bodied individuals, including but not limited to the following:

i. There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches maximum above the finished floor or ground surface;

ii. Defendants fail to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking structure;

iii. There are no van accessible parking spaces located at the shortest accessible route to the entrance;

iv. Defendants to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

cccc) Defendants provide a curb ramp in front of the Victoria's Secret facility for able-bodied individuals, but fails to provide any ADA accessible curb ramp for non-able-bodied individuals, including but not limited to the following:

i. The curb ramp has a running slope that exceeds the maximum allowed slope of 4.76 degrees (8.33%);

ii. The parking lot fails to provide an accessible route from the parking lot to the facility entrance;

iii. Defendants fail to maintain the accessible features at the curb ramp that are required to be readily accessible to and usable by individuals with disabilities;

dddd) Defendants provide parking spaces in front of Regis Salon for able-bodied individuals, but fails to provide any ADA accessible parking spaces for non-able-bodied individuals, including but not limited to the following:

   i. There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches maximum above the finished floor or ground surface;

   ii. Pier Park fails to have and otherwise fails to evenly disburse the van accessible parking spaces throughout the parking structure;

   iii. There are no van accessible parking spaces located at the shortest accessible route to the entrance;

   iv. Defendants fail to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

**eeee)** Defendants provide a curb ramp in front of the Regis Salon facility for able-bodied individuals, but fails to provide any ADA accessible curb ramp for non-able-bodied individuals, including but not limited to the following:

    **i.** The curb ramp has a running slope that exceeds the maximum allowed slope of 4.76 degrees (8.33%);

    **ii.** The curb ramp has a cross slope that exceeds the maximum allowed slope of 1.19 degrees (2.08%);

    **iii.** The parking lot fails to provide an accessible route from the parking lot to the facility entrance;

    **iv.** Defendants fail to maintain the accessible features at the curb ramp that are required to be readily accessible to and usable by individuals with disabilities;

**ffff)** Defendants provide a curb ramp leading to the 30A facility for able-bodied individuals, but fails to provide any ADA accessible curb ramp for non-able-bodied individuals, including but not limited to the following:

    **i.** The curb ramp has a running slope that exceeds the maximum allowed slope of 4.76 degrees (8.33%);

ii. The curb ramp has a cross slope that exceeds the maximum allowed slope of 1.19 degrees (2.08%);

iii. The parking lot fails to provide an accessible route from the parking lot to the facility entrance;

iv. Defendants fail to maintain the accessible features at the curb ramp that are required to be readily accessible to and usable by individuals with disabilities;

gggg) Defendants provide a curb ramp leading to the Chicos facility for able-bodied individuals, but fails to provide any ADA accessible curb ramp for non-able-bodied individuals, including but not limited to the following:

i. The curb ramp has a running slope that exceeds the maximum allowed slope of 4.76 degrees (8.33%);

ii. The parking lot fails to provide an accessible route from the parking lot to the facility entrance;

iii. Defendants fail to maintain the accessible features at the curb ramp that are required to be readily accessible to and usable by individuals with disabilities;

**hhhh)** Defendants provide a curb ramp leading to the Sunglass World outpost facility for able-bodied individuals, but fails to provide any ADA accessible curb ramp for non-able-bodied individuals, including but not limited to the following:

> i. The curb ramp has a running slope that exceeds the maximum allowed slope of 4.76 degrees (8.33%);
>
> ii. The parking lot fails to provide an accessible route from the parking lot to the facility entrance;
>
> iii. Defendants fail to maintain the accessible features at the curb ramp that are required to be readily accessible to and usable by individuals with disabilities;

**iiii)** Defendants provide a curb ramp leading to the RMG Toys facility for able-bodied individuals, but fails to provide any ADA accessible curb ramp for non-able-bodied individuals, including but not limited to the following:

> i. The curb ramp has a running slope that exceeds the maximum allowed slope of 4.76 degrees (8.33%);
>
> ii. The parking lot fails to provide an accessible route from the parking lot to the facility entrance;

       **iii.** Defendants fail to maintain the accessible features at the curb ramp that are required to be readily accessible to and usable by individuals with disabilities;

**jjjj)** Defendants provide a curb ramp leading to the Lane Bryant facility for able-bodied individuals, but fails to provide any ADA accessible curb ramp for non-able-bodied individuals, including but not limited to the following:

       **i.** The curb ramp has a running slope that exceeds the maximum allowed slope of 4.76 degrees (8.33%);

       **ii.** The parking lot fails to provide an accessible route from the parking lot to the facility entrance;

       **iii.** Defendants fail to maintain the accessible features at the curb ramp that are required to be readily accessible to and usable by individuals with disabilities;

## AMORE ITALIAN ICE

**kkkk)** Defendants provide a sales/service counter at Amore Italian Ice for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the

experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A. The sales/service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

   i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

   ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B. The existing sales/service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

   i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

  ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

  iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendants provide a point of sale machine to transact business at the sales/service counter for able-bodied individuals, but fails to provide the same level of service

to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

F. Defendants locate merchandise within the counter surface and consequently obstructs the required clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the sales/service counter;

G. Defendants fail to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

## BUMPER BOATS AND SUPER BUNGEE AREA

llll) Defendants provide a check-out counter at the Bumper Boats and Super Bungee area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A. The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with

disabilities to be able to make a parallel approach to the counter;

    **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

       **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendants provide a point of sale machine to transact business at the check-out counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

**F.** Defendants locate the point of sale machine within the counter surface and consequently obstructs the required

clear counter surface, which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to access the check-out counter;

G. Defendants fail to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

## CUBBY CABOOSE MINI-EXPRESS

mmmm) Defendants provide a check-out counter at Cubby Caboose Mini-Express for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A. The check-out counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

     **i.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

     **ii.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**B.** The existing check-out counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

     **i.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

     **ii.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

     **iii.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided

underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**C.** There is no ADA accessible portion of the check-out counter that extends the same depth as the non-accessible portion of the check-out counter;

**D.** There is no ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

**E.** Defendants fail to maintain the accessible features at the check-out counter that are required to be readily accessible to and usable by individuals with disabilities;

## RESTROOM BY MARBLE SLAB

**nnnn)** Defendants provide a toilet compartment in the restroom by Marble Slab for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without

disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The toilet compartment door is not self-closing;

    **ii.** There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a water closet that measures a maximum of 16-18 inches from the side wall;

    **iii.** There is not at least one ADA accessible wheelchair accessible toilet compartment that provide a side wall grab bar measured 42 inches long and extending 54 inches measured from the rear wall;

    **iv.** There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a rear wall grab bar located 24 inches on the open side of the toilet compartment and 12 inches on the closed side of the toilet compartment;

    **v.** The toilet seat cover dispenser fails to meet the required distance of 12 inches above the rear wall grab bar;

vi. The lavatory sink exceeds the maximum height of 34 inches above the finished floor to the top surface of the counter;

vii. The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

viii. The highest operable part on the paper towel dispenser exceeds the maximum allowed height for an unobstructed reach;

ix. Defendants fail to maintain the accessible features of the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

oooo) Defendants provide a lavatory in the restroom by Marble Slab for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

ii. The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

iii. The highest operable part on the paper towel dispenser exceeds the maximum allowed height for an unobstructed reach;

iv. Defendants fail to maintain the accessible features of the lavatory that are required to be readily accessible to and usable by individuals with disabilities;

pppp) Defendants provide lounge seating benches outside of the restroom by Marble Slab for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. There is not at least one ADA accessible lounge seating bench that provides back support and/or are affixed to the wall;

ii. There is not at least one ADA accessible lounge seating bench that provides the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

iii. There is not at least one ADA accessible lounge seating bench that meets the minimum required length of 42 inches;

iv. There is not at least one ADA accessible lounge seating bench that is 20 inches deep minimum and 24 inches deep maximum;

v. There is not at least one ADA accessible lounge seating bench that is 17 inches minimum and 19 inches maximum above the finished floor;

vi. Defendants fail to maintain the accessible features of the lounge seating benches that are required to be readily accessible to and usable by individuals with disabilities;

## FAMILY TOILET ROOM BY MARBLE SLAB

**qqqq)** Defendants provide a family toilet room by Marble Slab for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

  i. The signage displaying the International Symbol of Accessibility is located on the toilet room door and fails to be located on the latch side of the door;

  ii. There is not at least one ADA accessible family toilet room that provides the required maneuvering clearance at the toilet room door;

  iii. When the baby changing table is in the downward position it obstructs the required 48 inches of perpendicular clear floor or ground space on the push side of the door;

  iv. When the baby changing table is in the downward position it obstructs the required 36 inches of walking surface within the toilet room;

v. The toilet room locking mechanism requires tight grasping, pinching and/or twisting of the wrist;

vi. The water closet on the left fails to provide the required 60x56 inches of clear floor or ground space around the water closet;

vii. The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

viii. The toilet seat cover dispenser fails to meet the required distance of 12 inches above the rear wall grab bar;

ix. The toilet paper dispenser fails to meet the required distance of 1.5 inches below the rear wall grab bar;

x. The highest operable part on the toilet seat cover dispenser above the water closet to the left exceeds the maximum allowed height for an obstructed reach;

xi. The highest operable part on the toilet seat cover dispenser above the water closet to the right exceeds the maximum allowed height for an obstructed reach;

xii. The highest operable part of the light switch exceeds the maximum allowed height for an unobstructed reach;

xiii. The highest operable part of the baby changing table exceeds the maximum allowed height for an unobstructed reach;

xiv. Defendants fail to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

## AREA INFORMATION BOOTH

rrrr) Defendants provide an area information counter area for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

A. The area information counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

B. The existing area information counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

i. There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above

the finished floor positioned for a forward
approach;

C.  There is no ADA accessible portion of the area
information counter that extends the same depth as the
non-accessible portion of the area information counter;

D.  Defendants fail to maintain the accessible features at the
sales/service counter that are required to be readily
accessible to and usable by individuals with disabilities;

ssss)  The area information booth floor mat is not stable, firm, or otherwise
secured to the floor;

tttt)  Defendants provide a toilet room in the Pier Park Amusements area for
able-bodied individuals, but fails to afford non-able-bodied individuals
the same opportunity to participate in or benefit from a good, service,
facility, privilege, advantage, or accommodation that is equal to that
experience afforded to individuals without disabilities, which includes
but is not limited to the following failures of Defendants:

i.  The door hardware exceeds the maximum allowed height
of 48 inches above the finished floor;

ii. The water closet fails to provide the required 60x56 inches of clear floor or ground space around the water closet;

iii. The centerline of the water closet exceeds the maximum allowed distance from the side wall of 16-18 inches;

iv. The side wall grab bar fails to measure 33-36 inches above the finished floor;

v. The rear wall grab bar fails to measure 33-36 inches above the finished floor;

vi. The side wall grab bar exceeds the maximum allowed distance of 12 inches from the rear wall;

vii. The toilet paper dispenser requires tight grasping, twisting, and/or pinching of the wrist and otherwise restricts the continuous paper flow;

viii. The toilet paper is placed on top of the side wall grab bar and fails to meet the required distance of 12 inches;

ix. Defendants locate the toilet paper on top of the side wall grab bar rather than in a toilet paper dispenser and consequently obstructs the continuous paper flow which has a discriminatory effect in practice of prohibiting

disabled individuals from the full and equal opportunity to use the toilet paper;

x. There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

xi. The lavatory sinks drain pipes fail to be properly insulated or otherwise protected against contact;

xii. The bottom reflecting surface of the mirror exceeds 40 inches above the finished floor;

xiii. The highest operable part on the light switch exceeds the maximum allowed height for an obstructed reach;

xiv. The highest operable part on the baby changing table exceeds the maximum allowed height for an obstructed reach;

xv. Defendants fail to maintain the accessible features of the toilet room that are required to be readily accessible to and usable by individuals with disabilities;

## RESTROOM BY THE FLORIDA HOUSE

uuuu) Defendants provide a restroom by the Florida House for able-bodied individuals, but fails to afford non-able-bodied individuals the same

opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The restroom entrance door fails to provide the required perpendicular clear floor space for an individual with a disability to be afforded the opportunity to maneuver into and out of the restroom;

**vvvv)** Defendants provide an ambulatory accessible toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

    **i.** The toilet compartment door is not self-closing;

    **ii.** The toilet compartment door fails to have door pulls located on both sides;

**wwww)** Defendants provide a toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to

participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

  i.  The toilet compartment door is not self-closing;

 ii.  The toilet compartment door fails to provide the required maneuvering clearance for an individual with a disability to be afforded the opportunity to maneuver into and out of the toilet compartment;

iii.  The water closet fails to provide the required 60x56 inches of clear floor or ground space around the water closet;

 iv.  Defendants locate a trash can around the water closet and consequently obstructs the clear floor or ground space which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use the water closet;

  v.  There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a water closet that measures a maximum of 16-18 inches from the side wall;

      **vi.** There is not at least one ADA accessible wheelchair accessible toilet compartment that provides a rear wall grab bar located 24 inches on the open side of the toilet compartment and 12 inches on the closed side of the toilet compartment;

      **vii.** Defendants fail to maintain the accessible features of the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

## Common Areas

**xxxx)** Defendants provide outdoor dining tables and seating tables for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

      **i.** The top surface of the seating tables exceeds the maximum allowed height of 34 inches above the finished floor;

      **ii.** The seating tables fails to provide at least five percent (5%) ADA accessible seating;

iii. The seating tables fail to provide the required knee clearance for an individual with a disability to be afforded the opportunity to sit at the dining tables;

iv. The seating tables fail to provide the required toe clearance for an individual with a disability to be afforded the opportunity to sit at the dining tables;

v. There is not a 30-inch-wide minimum clear table surface available for an individual with a disability to be afforded the opportunity to approach the table surface;

vi. Defendants fail to maintain the accessible features at seating tables in the common areas that are required to be readily accessible to and usable by individuals with disabilities;

yyyy) Defendants provide outdoor lounge seating benches for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendants:

i. There is not at least one ADA accessible lounge seating bench that provides back support and/or is affixed to the wall;

ii. There is not at least one ADA accessible lounge seating bench that provides the required clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

iii. There is not at least one ADA accessible lounge seating bench that meets the minimum required length of 42 inches;

iv. There is not at least one ADA accessible lounge seating bench that is 20 inches deep minimum and 24 inches deep maximum;

v. There is not at least one ADA accessible lounge seating bench that is 17 inches minimum and 19 inches maximum above the finished floor;

vi. Defendants fail to maintain the accessible features of the lounge seating benches in the common areas that are required to be readily accessible to and usable by individuals with disabilities;

**zzzz)** There is no informational signage directing disabled individuals to the accessible restroom;

24. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

25. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. §12205.

26. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiffs' injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendants to modify its policies, practices, and procedures, to provide equal use of its facility, services and benefits to disabled individuals.

**COUNT TWO**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(ii)**
*(Practices, procedures, and policies denying equal benefits)*

**ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers**

27. Plaintiffs re-allege paragraphs 1-26 above.

28. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

29. The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided

"segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." <u>See</u> 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

30. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

31. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to),

or operates a place of public accommodation." 42 U.S.C. 12182.

32. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

33. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals'

full and equal enjoyment of the privileges and services offered by the

public accommodation to the public. 42 U.S.C. § 12182. Thus, a

public accommodation may not have a policy, practice or procedure

that excludes individuals with disabilities from services. 42 U.S.C. §

12182(b)(2)(A)(ii). The Eleventh Circuit held in <u>Rendon v.</u>

<u>Valleycrest Prod., Ltd.</u> 294 F.3d 1279, (11th Cir. 2002) that:

> *"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and <u>intangible barriers</u> (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."*

## Defendants' Failed Practices and Lack of Policies Are Discriminatory

**34.** Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

**35.** Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

**36.** As detailed below, Defendants have failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing

to take such efforts that may be necessary to ensure that no individual

with a disability is excluded, Defendants denied services, segregated or

otherwise treated Plaintiffs differently than other individuals who are

not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendants have

discriminated against Plaintiffs. Defendants will continue that

discrimination forever until enjoined as Plaintiffs request. The

discrimination is described more particularly in the following

paragraphs.

37. Defendants either have no policies, practices, and procedures to remove

architectural barriers or else does not abide by them. The rampant

architectural barriers previously identified in Count One establish that

Defendants have failed to create, adopt, and/or implement ADA Title

III compliance policies, procedures, and practices as to architectural

barriers.

38. Defendants' use of their establishment, and their practices at the Pier

Park establishment located at 600 Pier Park Dr., Panama City Beach,

FL 32413, literally create barriers and in so doing deny Plaintiffs the

full and equal enjoyment of the establishment. Those practices include:

a) Defendants make the check-out counter in 30A inaccessible for

use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter to check out in the way the non-disabled do, because the non-disabled have a counter they can use to checkout;

**b)** Defendants use the accessible counter surface as a sales area, so that Plaintiffs do not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

**c)** Defendants fail to provide an accessible dressing room to Plaintiffs and other disabled individuals, so that Plaintiffs cannot try on clothes or move into and throughout the dressing room, which the able-bodied can freely do;

**d)** Defendants fail to provide signage in the dressing room area displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible dressing room, which means that 30A does not even claim to have an ADA accessible dressing room and that Plaintiffs have to use trial and error to decide which dressing room they can use, if they can use any at all, unlike the non-disabled who can freely use any dressing room they would like;

**e)** Defendants make the check-out counter in RMG Toys inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter to check out in the way the non-disabled do, because the non-disabled have a counter they can use to checkout;

**f)** Defendants locate a clothing stand at the entrance door and consequently obstructs the required clear floor space at the entrance which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity enter Andi's;

**g)** Defendants fail to provide an accessible route to and throughout the shopping retail aisles at Andi's, which means that Plaintiffs cannot travel and move throughout the shopping retail aisles the way non-disabled people can. Accordingly, they cannot fully and equally use the store as the non-disabled can;

**h)** Defendants make the sales/service counter in Andi's inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do,

because the non-disabled have a counter they can use;

**i)** Defendants fail to provide an accessible dressing room to Plaintiffs and other disabled individuals, so that Plaintiffs cannot try on clothes or move into and throughout the dressing room, which the able-bodied can freely do;

**j)** Defendants fail to provide signage in the dressing room area displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible dressing room, which means that Andi's does not even claim to have an ADA accessible dressing room and that Plaintiffs have to use trial and error to decide which dressing room they can use, if they can use any at all, unlike the non-disabled who can freely use any dressing room they would like;

**k)** Defendants make the self-service counters in Candymaker inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

**l)** Defendants make check-out counter in Candymaker inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter to check out in the way the non-disabled do, because the non-disabled have a counter they can use to checkout;

**m)** Defendants make the fudge selection counter in Candymaker inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

**n)** Defendants locate buckets adjacent to the fudge selection counter and consequently obstructs the required clear floor space at the fudge selection counter which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to use and access the fudge selection counter;

**o)** Defendants make their self-service candy dispensers and their associated benefits inaccessible for use by the disabled, which means that Plaintiffs are required to seek assistance to use the

candy dispensers or otherwise be outright excluded from the benefits of the self-serving candy dispensers whereas non-disabled individuals do not need to seek assistance to use the candy dispensers so that they enjoy independently viewing and selecting the colorful assortment of candies and other benefits;

**p)** Defendants fail to provide an accessible route to and throughout the shopping retail aisles at Carters/Oshkosh B'gosh, which means that Plaintiffs cannot travel and move throughout the shopping retail aisles the way non-disabled people can. Accordingly, they cannot fully and equally use the store as the non-disabled can;

**q)** Defendants make check-out counter in Carters/Oshkosh B'gosh inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter to check out in the way the non-disabled do, because the non-disabled have a counter they can use to checkout;

**r)** Point of sale machines at the check-out counter are located so as to be inaccessible, which denies Plaintiffs the ability to equally use those machines as the non-disabled, who can independently

use the point of sale machines to pay for their purchases at Carters/Oshkosh B'gosh, though they cannot;

s) Defendants use the accessible counter surface as a sales area, so that Plaintiffs do not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

t) Defendants use the accessible clear floor space as a sales area, so that Plaintiffs do not have clear floor space to use the counter, unlike the able-bodied who do have usable clear floor space to use the counter;

u) Defendants make display counters in Carters/Oshkosh B'gosh inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

v) Defendants fail to provide an accessible toilet room in Carters/Oshkosh B'gosh to Plaintiffs and other disabled individuals, so that Plaintiffs cannot relieve themselves or move into and throughout the toilet room, which the able-bodied can freely do;

**w)** Defendants make check-out counter in Sunglass World inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter to check out in the way the non-disabled do, because the non-disabled have a counter they can use to checkout;

**x)** Defendants make self-service glasses displays in Sunglass World inaccessible for use by the disabled which means Plaintiffs cannot fully and equally use the display in the way the non-disabled do, because the non-disabled have displays they can use;

**y)** Defendants make self-service hat displays in Sunglass World inaccessible for use by the disabled which means Plaintiffs cannot fully and equally use the display in the way the non-disabled do, because the non-disabled have displays they can use;

**z)** Defendants make check-out counter in Deja Vu inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter to check out in the way the non-disabled do, because the non-disabled have a counter they can use to checkout;

**aa)** Defendants use the accessible counter surface as a sales area, so that Plaintiffs do not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

**bb)** Defendants make lounge seating chairs at Deja Vu inaccessible for use by the disabled by failing to provide seating that conforms to the ADA Standards for Accessible Design, which means Plaintiffs cannot fully and equally use the seating to sit and relax while shopping, as the able-bodied can;

**cc)** Defendants fail to provide an accessible dressing room to Plaintiffs and other disabled individuals, so that Plaintiffs cannot try on clothes or move into and throughout the dressing room, which the able-bodied can freely do;

**dd)** Defendants fail to provide signage in the dressing room area displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible dressing room, which means that Defendants do not even claim to have an ADA accessible dressing room in Deja Vu and that Plaintiffs have to use trial and error to decide which dressing room they can use, if they can use any at all, unlike the non-disabled who can freely use any dressing room they would like;

**ee)** Defendants make sales/service counter in Marble Slab inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

**ff)** Defendants use the accessible counter surface as a sales area, so that Plaintiffs do not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

**gg)** Defendants make the food selection counter in Marble Slab inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

**hh)** Defendants use the accessible counter surface as a sales area, so that Plaintiffs do not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

**ii)** Defendants fail to provide an accessible toilet room in Marble Slab to Plaintiffs and other disabled individuals, so Plaintiffs

cannot relieve themselves or move into and throughout the toilet room, which the able-bodied can freely do;

jj) Defendants fail to provide signage in the toilet room area displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible toilet room, which means that Defendants do not even claim to have an ADA accessible toilet room in Marble Slab and that Plaintiffs have to use trial and error to decide which toilet room they can use, if they can use any at all, unlike the non-disabled who can freely use any toilet room they would like;

kk) Defendants make check-out counter in Pink Narcissus inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter to check out in the way the non-disabled do, because the non-disabled have a counter they can use to checkout;

ll) Defendants make lounge seating chairs in Pink Narcissus inaccessible for use by the disabled by failing to provide seating that conforms to the ADA Standards for Accessible Design, which means Plaintiffs cannot fully and equally use the seating

to sit and relax while shopping, as the able-bodied can;

mm) Defendants fail to provide an accessible dressing room to Plaintiffs and other disabled individuals, so that Plaintiffs cannot try on clothes or move into and throughout the dressing room, which the able-bodied can freely do;

nn) Defendants fail to provide signage in the dressing room area displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible dressing room, which means that Defendants do not even claim to have an ADA accessible dressing room in Pink Narcissus and that Plaintiffs have to use trial and error to decide which dressing room they can use, if they can use any at all, unlike the non-disabled who can freely use any dressing room they would like;

oo) Defendants locate a barrel and other items outside of the dressing room and consequently obstructs the required maneuvering clearance which has a discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to enter the dressing room;

pp) Defendants make a hostess counter in Pompano Joe's inaccessible for use by the disabled by failing to provide either a

parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

**qq)** Defendants' seating arrangement downstairs in Pompano Joe's is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike the able-bodied, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Pompano Joe's experience;

**rr)** Defendants' use of its seating arrangement downstairs in Pompano Joe's has a discriminatory effect in practice, so that Plaintiffs are provided a "separate" and "unequal" benefit than the benefits that able-bodied individuals have when dining at Defendants' establishment because able-bodied individuals can sit at every type of seating table, whereas Plaintiffs are entirely prohibited from that same "opportunity" to considering where

they want to sit;

ss) Defendants make their bar counter downstairs inaccessible for use by the disabled by failing to provide any bar counter that conforms to the ADA design standards, which means Plaintiffs cannot fully and equally dine at the bar or any other benefit provided at the bar in the same way the non-disabled do, because the non-disabled have a bar counter they can use to dine and enjoy all of the goods and services offered at Pompano Joe's;

tt) Defendants' seating arrangement upstairs in Pompano Joe's is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike the able-bodied, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Pompano Joe's experience;

uu) Defendants' use of its seating arrangement upstairs in Pompano Joe's has a discriminatory effect in practice, so that Plaintiffs are provided a "separate" and "unequal" benefit than the benefits that

able-bodied individuals have when dining at Defendants'
establishment because able-bodied individuals can sit at every
type of seating table, whereas Plaintiffs are entirely prohibited
from that same "opportunity" to considering where they want to
sit;

vv) Defendants make their bar counter upstairs inaccessible for use
by the disabled by failing to provide any bar counter that
conforms to the ADA design standards, which means Plaintiffs
cannot fully and equally dine at the bar or any other benefit
provided at the bar in the same way the non-disabled do, because
the non-disabled have a bar counter they can use to dine and enjoy
all of the goods and services offered at Pompano Joe's;

ww) Defendants fail to provide signage in the restroom area displaying
the International Symbol of Accessibility informing and directing
disabled individuals to the ADA accessible restroom, which
means that Defendants do not even claim to have an ADA
accessible restroom in Pompano Joe's and that Plaintiffs have to
use trial and error to decide which restroom they can use, if they
can use any at all, unlike the non-disabled who can freely use any
restroom they would like;

**xx)** Defendants fail to provide an accessible restroom in Pompano Joe's to Plaintiffs and other disabled individuals, so that Plaintiffs cannot relieve themselves or move into and throughout the restroom, which the able-bodied can freely do;

**yy)** Defendants make check-out counters in Ron Jon inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter to check out in the way the non-disabled do, because the non-disabled have a counter they can use to checkout;

**zz)** Defendants fail to provide an accessible dressing room to Plaintiffs and other disabled individuals, so that Plaintiffs cannot try on clothes or move into and throughout the dressing room, which the able-bodied can freely do;

**aaa)** Defendants fail to provide signage in the dressing room area displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible dressing room, which means that Defendants do not even claim to have an ADA accessible dressing room in Ron Jon and that Plaintiffs have to use trial and error to decide which dressing room they can use,

if they can use any at all, unlike the non-disabled who can freely use any dressing room they would like;

bbb) Defendants make lounge seating benches inaccessible for use by the disabled by failing to provide a bench that conforms to the ADA Standards for Accessible Design, which means Plaintiffs cannot fully and equally use the benches to sit and relax while shopping at Ron Jon, as the able-bodied can;

ccc) Defendants make sale/service counter in Runway Collection inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

ddd) Defendants use the accessible counter surface as a sales area, so that Plaintiffs do not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

eee) Defendants fail to provide an accessible dressing room to Plaintiffs and other disabled individuals, so that Plaintiffs cannot try on clothes or move into and throughout the dressing room, which the able-bodied can freely do;

**fff)** Defendants fail to provide an accessible route to and throughout the shopping retail aisles at Runway Collection, which means that Plaintiffs cannot travel and move throughout the shopping retail aisles the way non-disabled people can. Accordingly, they cannot fully and equally use the store as the non-disabled can;

**ggg)** Defendants make the sales/service counter in Salt Life/Latitude 29 inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

**hhh)** Point of sale machines at the sales/service counter are located so as to be inaccessible, which denies Plaintiffs the ability to equally use those machines as the non-disabled, who can independently use the point of sale machines to pay for their purchases at Salt Life/Latitude 29, though they cannot;

**iii)** Defendants use the accessible counter surface as a sales area, so that Plaintiffs do not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

**jjj)** Defendants fail to provide an accessible dressing room to

Plaintiffs and other disabled individuals, so that Plaintiffs cannot try on clothes or move into and throughout the dressing room, which the able-bodied can freely do;

kkk) Defendants fail to provide signage in the dressing room area displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible dressing room, which means that Salt Life/Latitude 29 does not even claim to have an ADA accessible dressing room and that Plaintiffs have to use trial and error to decide which dressing room they can use, if they can use any at all, unlike the non-disabled who can freely use any dressing room they would like;

lll) Defendants fail to provide an accessible route to and throughout the shopping retail aisles at Salt Life/Latitude 29, which means that Plaintiffs cannot travel and move throughout the shopping retail aisles the way non-disabled people can. Accordingly, they cannot fully and equally use the store as the non-disabled can;

mmm) Defendants make the ordering counter in Schlotzsky's inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally order at the counter in the way

the non-disabled do, because the non-disabled have a counter they can order at;

nnn) Defendants use the accessible counter surface as a sales area, so that Plaintiffs do not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

ooo) Defendants make the self-service tray return counter in Schlotzsky's inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

ppp) Defendants make the self-service counter in Schlotzsky's inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

qqq) Defendants' seating arrangement in Schlotzsky's is designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the

same experience that is afforded to able-bodied individuals, because unlike the able-bodied, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Schlotzsky's experience;

rrr) Defendants' use of its seating arrangement in Schlotzsky's has a discriminatory effect in practice, so that Plaintiffs are provided a "separate" and "unequal" benefit than the benefits that able-bodied individuals have when dining at Defendants' establishment because able-bodied individuals can sit at every type of seating table, whereas Plaintiffs are entirely prohibited from that same "opportunity" to considering where they want to sit;

sss) Defendants fail to provide signage in the restroom area displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible restroom, which means that Schlotzsky's does not even claim to have an ADA accessible restroom and that Plaintiffs have to use trial and error to decide which restroom they can use, if they can use any at all, unlike the non-disabled who can freely use any restroom they

would like;

**ttt)** Defendants fail to provide an accessible restroom in Schlotzsky's to Plaintiffs and other disabled individuals, so that Plaintiffs cannot relieve themselves or move into and throughout the restroom, which the able-bodied can freely do;

**uuu)** Defendants make the ordering counter in Smoothie King inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally order at the counter in the way the non-disabled do, because the non-disabled have a counter they can order at;

**vvv)** Defendants make the pick-up counter in Smoothie King inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally pick-up their items ordered at the counter in the way the non-disabled do, because the non-disabled have a counter they can pick-up their items ordered at;

**www)** Defendants fail to provide an accessible toilet room in Smoothie King to Plaintiffs and other disabled individuals, so that Plaintiffs cannot relieve themselves or move into and throughout the toilet

room, which the able-bodied can freely do;

xxx) Defendants fail to provide an accessible route to the toilet room at Smoothie King, which means that Plaintiffs cannot travel and move to the toilet room the way non-disabled people can. Accordingly, they cannot relieve themselves as the non-disabled can;

yyy) Defendants make the sales/service counter in The Florida House inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

zzz) Point of sale machines at the sales/service counter are located so as to be inaccessible, which denies Plaintiffs the ability to equally use those machines as the non-disabled, who can independently use the point of sale machines to pay for their purchases at The Florida House, though they cannot;

aaaa) Defendants use the accessible counter surface as a sales area, so that Plaintiffs do not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

**bbbb)** Defendants fail to provide an accessible dressing room to Plaintiffs and other disabled individuals, so that Plaintiffs cannot try on clothes or move into and throughout the dressing room, which the able-bodied can freely do;

**cccc)** Defendants fail to provide signage in the dressing room area displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible dressing room, which means that The Florida House does not even claim to have an ADA accessible dressing room and that Plaintiffs have to use trial and error to decide which dressing room they can use, if they can use any at all, unlike the non-disabled who can freely use any dressing room they would like;

**dddd)** Defendants make the sales/service counter in Unique Boutique inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

**eeee)** Defendants use the accessible counter surface as a sales area, so that Plaintiffs do not have a counter surface to use, unlike the

able-bodied who do have usable counter surfaces;

**ffff)** Defendants fail to provide an accessible dressing room to Plaintiffs and other disabled individuals, so that Plaintiffs cannot try on clothes or move into and throughout the dressing room, which the able-bodied can freely do;

**gggg)** Defendants fail to provide an accessible route to and throughout the shopping retail aisles at Unique Boutique, which means that Plaintiffs cannot travel and move throughout the shopping retail aisles the way non-disabled people can. Accordingly, they cannot fully and equally use the store as the non-disabled can;

**hhhh)** Defendants fail to provide ADA accessible parking with connecting accessible routes to the establishment from their parking structure, which means that Plaintiffs are forced to depend on assistance from a third party to access the Pier Park establishment, whereas non-disabled conveniently access the establishment from the parking area;

**iiii)** Defendants make the sales/service counter in Amore Italian Ice inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the

non-disabled do, because the non-disabled have a counter they can use;

**jjjj)** Point of sale machines at the sales/service counter are located so as to be inaccessible, which denies Plaintiffs the ability to equally use those machines as the non-disabled, who can independently use the point of sale machines to pay for their purchases at Amore Italian Ice, though they cannot;

**kkkk)** Defendants use the accessible counter surface as a sales area, so that Plaintiffs do not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

**llll)** Defendants make the check-out counter at the Bumper Boats and Super Bungee area inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

**mmmm)** Point of sale machines at the check-out counter are located so as to be inaccessible, which denies Plaintiffs the ability to equally use those machines as the non-disabled, who can independently use the point of sale machines to pay at the Bumper Boats and

Super Bungee area, though they cannot;

**nnnn)** Defendants make the check-out counter at Cubby Caboose Mini-Express inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

**oooo)** Defendants fail to provide an accessible restroom by Marble Slab to Plaintiffs and other disabled individuals, so that Plaintiffs cannot relieve themselves or move into and throughout the restroom, which the able-bodied can freely do;

**pppp)** Defendants make lounge seating benches inaccessible for use by the disabled by failing to provide a bench that conforms to the ADA Standards for Accessible Design, which means Plaintiffs cannot fully and equally use the benches to sit and relax while outside of the restroom by Marble Slab, as the able-bodied can;

**qqqq)** Defendants fail to provide an accessible toilet room by Marble Slab to Plaintiffs and other disabled individuals, so that Plaintiffs cannot relieve themselves or move into and throughout the toilet room, which the able-bodied can freely do;

**rrrr)** Defendants fail to provide signage in the restroom area displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible toilet room, which means that Defendants do not even claim to have an ADA accessible toilet room by Marble Slab and that Plaintiffs have to use trial and error to decide which toilet room they can use, if they can use any at all, unlike the non-disabled who can freely use any toilet room they would like;

**ssss)** Defendants make the area information counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiffs cannot fully and equally use the counter in the way the non-disabled do, because the non-disabled have a counter they can use;

**tttt)** Defendants fail to provide an accessible toilet room in the Pier Park Amusements area to Plaintiffs and other disabled individuals, so that Plaintiffs cannot relieve themselves or move into and throughout the toilet room, which the able-bodied can freely do;

**uuuu)** Defendants fail to provide an accessible restroom by The Florida House to Plaintiffs and other disabled individuals, so that

Plaintiffs cannot relieve themselves or move into and throughout the restroom, which the able-bodied can freely do;

vvvv) Defendants' seating arrangement in the common areas are designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike the able-bodied, disabled individuals are forced to sit at one type of table or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the experience;

wwww) Defendants' use of its seating arrangement in the common areas have a discriminatory effect in practice, so that Plaintiffs are provided a "separate" and "unequal" benefit than the benefits that able-bodied individuals have when dining at Defendants' establishment because able-bodied individuals can sit at every type of seating table, whereas Plaintiffs are entirely prohibited from that same "opportunity" to considering where they want to sit;

xxxx) Defendants make outdoor lounge seating benches inaccessible for use by the disabled by failing to provide a bench that conforms

to the ADA Standards for Accessible Design, which means Plaintiffs cannot fully and equally use the benches to sit and relax while in the common areas, as the able-bodied can;

**yyyy)** Defendants fail to provide signage in the areas displaying the International Symbol of Accessibility informing and directing disabled individuals to the ADA accessible restroom, which means that Defendants do not even claim to have an ADA accessible restroom and that Plaintiffs have to use trial and error to decide which restroom they can use, if they can use any at all, unlike the non-disabled who can freely use any restroom they would like;

**zzzz)** Defendants' policies, practices, and procedures are conducted without regard to disabled individuals;

**39.** As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

**40.** As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants' existing practice is

both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

41. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its retail store as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of the goods and services offered at the establishment, as described above in detail.

42. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

43. To date, the Defendants' discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

44. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiffs hereby demand that Defendants both create and adopt a corporate practice and policy that Defendants (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendants' establishment consistent with the ADA; (2) Defendants will provide the disabled, including those with mobility limitations full and equal use and enjoyment of the Pier Park establishment; (3) Defendants will modify its practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

45. As pled above, Pier Park, LLC "owns" and "leases" the property located at 600 Pier Park Dr., Panama City Beach, FL 32413, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

46. As pled above, Simon Property Group, L.P. is the "developer" and "manages" the establishment located at 600 Pier Park Dr., Panama City

Beach, FL 32413, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

47. The ADA is over twenty-five (25) years old. Defendants know they must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

48. By this Complaint, Plaintiffs provide sufficient notice of their demands for an alteration in Defendants' policies, practices, and procedures.

49. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

50. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

**51.** Plaintiffs re-allege paragraphs 1-50 above.

**52.** 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

**53.** Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**54.** Congress also found that: *"individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities,*

*benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals*;" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

55. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

56. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial

of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

57. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

58. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendants' acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

**59.** To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination*" including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) (*"It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation"*).

**60.** For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public

accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

61. The keystone for this analysis is Defendants *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience*. *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005) See also, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

62. Plaintiffs, Patrick Dunn and Hope Elly, were denied full and equal access to the Pier Park establishment. Plaintiffs specifically and definitely want to return to the Defendants' establishment to enjoy the over one million square feet of open-air regional lifestyle shopping, providing unique retailers, tourist attractions, and dining options that are offered at Pier Park. More specifically, Plaintiffs want to be afforded the same level of service and that same "Simon experience" that is offered to non-disabled individuals and which Defendants have failed to provide to Plaintiffs as follows: Defendants failed to provide the same experience by making it nearly impossible for the disabled to

access the check-out counter in 30A, while the non-disabled can independently access the counter and services provided at the counter; Defendants use the accessible counter surface at 30A as a merchandise sales table, which denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants failed to provide an accessible dressing room inside 30A that is readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants' failure to identify by signage what is accessible and what is not accessible inside 30A makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to provide the same experience at 30A by failing to provide a bench for the disabled to sit while trying on merchandise in the dressing rooms, while the non-disabled can fully use the bench; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the check-out counter in RMG Toys, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide an accessible route to and throughout the store and shopping retail aisles for disabled individuals at Andi's at the

Pier, which means that unlike the non-disabled, the disabled must struggle to move throughout the store and retail aisles, if they can make it at all; Defendants failed to provide the same experience at Andi's at the Pier by making it nearly impossible for the disabled to access the sales/service counter in Andi's at the Pier, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide an accessible dressing room in Andi's at the Pier that is readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants' failure to identify by signage what is accessible and what is not accessible inside Andi's at the Pier makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to provide the same experience at Andi's at the Pier by failing to provide a bench for the disabled to sit while trying on merchandise in the dressing rooms, while the non-disabled can fully use the bench; Defendants failed to provide the same experience the Candymaker store by making it nearly impossible for the disabled to access the self-service counters in the Candymaker store, while the non-disabled can independently access the counter and

services provided at the counter; Defendants failed to provide the same experience by making it nearly impossible for the disabled to be able to independently access items maintained on the self-service counter, while the non-disabled can independently access the items on the counter; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the check-out counter in the Candymaker store, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the fudge selection counter in the Candymaker store, while the non-disabled can independently access the counter and services provided at the counter; Defendants' use of the accessible clear floor space as a merchandise sales area denies the disabled the clear floor space to access the counter, unlike the able-bodied, who have usable clear floor space; Defendants failed to provide an accessible route to and throughout the store and shopping retail aisles for disabled individuals at Carters/Oshkosh B'gosh, which means that unlike the non-disabled, the disabled must struggle to move throughout the store and retail aisles, if they can make it at all; Defendants failed to provide the same experience by making it nearly

impossible for the disabled to access the check-out counter in Carters/Oshkosh B'gosh, while the non-disabled can independently access the counter and services provided at the counter; Defendants' use of the accessible counter surface at Carter's/Oshkosh B'gosh as a merchandise sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants use the accessible clear floor space at Carter's/Oshkosh B'gosh as a merchandise sales area, which denies the disabled the clear floor space to access the counter, unlike the able-bodied, who have usable clear floor space; Defendants failed to provide the same experience at Carter's/Oshkosh B'gosh by making it nearly impossible for the disabled to access the display counters in Carters/Oshkosh B'gosh, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide the same experience by making it nearly impossible for the disabled to be able to independently access items maintained on the display counters, while the non-disabled can independently access the merchandise on the display counters; Defendants failed to make the toilet room in Carters/Oshkosh B'gosh readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants failed to provide the same

experience by making it nearly impossible for the disabled to access the check-out counter in Sunglass World, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the self-service glass displays in Sunglass World, while the non-disabled can independently access the displays and services provided at the displays; Defendants failed to provide the same experience by making it nearly impossible for the disabled to be able to independently access items maintained on the self-service glass displays, while the non-disabled can independently access the merchandise on the displays; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the self-service hat display in Sunglass World, while the non-disabled can independently access the display and services provided at the display; Defendants failed to provide the same experience by making it nearly impossible for the disabled to be able to independently access items maintained on the self-service hat display, while the non-disabled can independently access the merchandise on the display; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the check-out counter in Deja Vu,

while the non-disabled can independently access the counter and services provided at the counter; Defendants' use of the accessible counter surface as a merchandise sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants failed to provide the same experience by failing to provide lounge seating chairs for the disabled to sit and relax while shopping at Deja Vu, while the non-disabled can fully use the seating; Defendants failed to provide an accessible dressing room that is readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants' failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to provide the same experience by failing to provide a bench for the disabled to sit while trying on merchandise in the dressing rooms, while the non-disabled can fully use the bench; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in Marble Slab, while the non-disabled can independently access the counter and services provided at the counter;

Defendants' use of the accessible counter surface as a merchandise sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the food selection counter in Marble Slab, while the non-disabled can independently access the counter and services provided at the counter; Defendants' use of the accessible counter surface as a merchandise sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants failed to make the toilet room in Marble Slab readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants' failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the check-out counter in Pink Narcissus, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide the same experience by failing to provide lounge

seating chairs for the disabled to sit and relax while shopping at Pink Narcissus, while the non-disabled can fully use the seating; Defendants failed to provide an accessible dressing room that is readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants' failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the hostess counter in Pompano Joe's, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide the same experience by failing to provide seating tables for the disabled to dine in the dining seating area downstairs, to dine at the bar downstairs, to dine at the outside dining area downstairs, to dine in the dining seating area upstairs, to dine at the bar upstairs, to dine at the elevated seating at the outside dining area, to dine at Pompano Joe's, while the non-disabled can fully use the seating tables and bars; Defendants failed to provide an accessible route to elevated seating at the outside dining area in Pompano Joe's for

disabled individuals, which means that unlike the non-disabled, the disabled must struggle to move to the dining area, if they can make it at all; Defendants' failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to make the restroom in Pompano Joe's readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the check-out counters in Ron Jon, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide an accessible dressing room that is readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants' failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to provide the same experience by failing to provide a lounge seating bench for

the disabled to sit and relax while at Ron Jon, while the non-disabled can fully use the bench; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in Runway Collection, while the non-disabled can independently access the counter and services provided at the counter; Defendants' use of the accessible counter surface as a items sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants failed to provide an accessible dressing room that is readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants failed to provide an accessible route to and throughout the store and shopping retail aisles for disabled individuals in Runway Collection, which means that unlike the non-disabled, the disabled must struggle to move throughout the store and retail aisles, if they can make it at all; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in Salt Life/Latitude 29, while the non-disabled can independently access the counter and services provided at the counter; Defendants' use of the accessible counter surface as a items sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter

surfaces; Defendants failed to provide an accessible dressing room that is readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants' failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to provide an accessible route to and throughout the store and shopping retail aisles for disabled individuals in Salt Life/Latitude 29, which means that unlike the non-disabled, the disabled must struggle to move throughout the store and retail aisles, if they can make it at all; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the ordering counter in Schlotzsky's, while the non-disabled can independently access the counter and services provided at the counter; Defendants' use of the accessible counter surface as a items sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the self-service tray return counter in Schlotzsky's, while the

non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the self-service counter in Schlotzsky's, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide the same experience by making it nearly impossible for the disabled to be able to independently access items maintained on the self-service counter, while the non-disabled can independently access the items on the counter; Defendants failed to provide the same experience by failing to provide seating tables for the disabled to dine in the dining seating area, to dine at Schlotzsky's, while the non-disabled can fully use the seating tables; Defendants failed to make the toilet room in Schlotzsky's readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants' failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the ordering

counter in Smoothie King, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the order pick-up counter in Smoothie King, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to make the toilet room in Smoothie King readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants failed to provide an accessible route to the toilet room for disabled individuals in Smoothie King, which means that unlike the non-disabled, the disabled must struggle to move to the toilet room, if they can make it at all; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in The Florida House, while the non-disabled can independently access the counter and services provided at the counter; Defendants' use of the accessible counter surface as a items sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants failed to provide an accessible dressing room that is readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants' failure to identify by signage what is

accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in Unique Boutique, while the non-disabled can independently access the counter and services provided at the counter; Defendants' use of the accessible counter surface as a items sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants failed to provide an accessible dressing room that is readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants failed to provide an accessible route to and throughout the store and shopping retail aisles for disabled individuals in Unique Boutique, which means that unlike the non-disabled, the disabled must struggle to move throughout the store and retail aisles, if they can make it at all; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the sales/service counter in Amore Italian Ice, while the non-disabled can independently access the counter and services provided at the counter;

Defendants' use of the accessible counter surface as a merchandise sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the check-out counter at the Bumper Boats and Super Bungee, while the non-disabled can independently access the counter and services provided at the counter; Defendants' use of the accessible counter surface as a place to keep the point of sale machine denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the check-out counter at the Cubby Caboose Mini-Express, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to make the restroom by Marble Slab readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants failed to provide the same experience by failing to provide a lounge seating bench outside of the restroom by Marble Slab for the disabled to sit and relax, while the non-disabled can fully use the bench; Defendants failed to make the toilet room by Marble Slab readily accessible to and usable by Plaintiffs and other

disabled individuals; Defendants' failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the area information counter, while the non-disabled can independently access the counter and services provided at the counter; Defendants failed to make the toilet room in the Pier Park Amusements area readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants failed to make the restroom by The Florida House readily accessible to and usable by Plaintiffs and other disabled individuals; Defendants failed to provide the same experience by failing to provide outdoor dining and seating tables for the disabled to sit and dine in the common areas of Pier Park, while the non-disabled can fully use the seating tables; Defendants failed to provide the same experience by failing to provide a lounge seating bench for the disabled to sit and relax in the common areas of Pier Park, while the non-disabled can fully use the bench; Defendants' failure to identify by signage what is accessible and what is not

accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; and all the foregoing failures by Defendants inhibited Plaintiffs from having the same experience that non-disabled individuals have when at the Pier Park establishment.

63. In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

64. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A) )(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) require that goods, services, and accommodations be provided

to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

65. Thus, Defendants' "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendants have segregated and separated the disabled from the non- disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected*." *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990),*

*reprinted in 1990 U.S.C.C.A.N. 303, 332*).

66. Defendants discriminated against Plaintiffs by denying Plaintiffs "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiffs an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Pier Park.

67. Defendants' conduct and Defendants' unequal treatment to Plaintiffs constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendants will continue to treat Plaintiffs and others similarly situated unequally to the status of a second-class citizen.

68. Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendants will continue to not maintain the required accessible features at Defendants' facility. 28 C.F.R.§ 36.211(a).

69. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their

reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

70. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendants.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12183(a)(1)**
*(Failure to design and construct facility for ADA compliance)*

71. Plaintiffs re-allege paragraphs 1 – 70 above.

72. 42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

73. Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this

discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

**74.** To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "*to get to, enter and use a facility*." H.R. Rep. No. 101-485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," id., as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to others*." Id.

**75.** As the legislative history makes clear, the ADA is geared to the future- - the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible.* H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

**76.** To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, interior stairways and elevators, restrooms, dressing rooms and sales/service areas.

**77.** Defendant, Pier Park, LLC, "owns" and "leases" the Pier Park establishment and at all relevant times was and is directly involved in

the designing and/or construction of its store in this litigation for first occupancy after January 1993.

78. Defendant, Simon Property Group, L.P., is the "developer" and "operator" of the Pier Park establishment and at all relevant times was and is directly involved in the designing and/or construction of its store in this litigation for first occupancy after January 1993.

79. Defendants were and are required to design and construct the Pier Park establishment to be "readily accessible to and usable by individuals with disabilities." Defendants violated the statute by failing to design and construct *their establishment to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendants further violated the statute by failing to design and construct its establishment in compliance with the ADA during planned alterations as described throughout this Complaint.

80. According to Defendants' own publicly available information, Defendants chose to design their establishment in a way that is not ADA Title III compliant whatsoever. Defendants literally strategically design, construct and maintain its establishment without any regard to the disabled. Defendants' systematic design of their establishment fails

to afford disabled individuals the same experience that is afforded to individuals without disabilities.

81. To date, the Defendants' discriminating actions continue.

82. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

83. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**WHEREFORE**, premises considered, Patrick Dunn and Hope Elly demands judgment against the Defendants on Counts One through Four and requests the following injunctive and declaratory relief:

1. That the Court declare that the property owned, and business operated by the Defendants as well as all Defendants' illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendants to alter the establishment to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to

comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.   That the Court enter an order, in accordance with Count Two, directing the Defendants to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendants to make its business practices consistent with ADA Title III in the future;

4.   That the Court enter an order directing the Defendants to provide Plaintiffs full and equal access both to the Pier Park experience and to the use of the Pier Park establishment, and further order Defendants to maintain the required accessible features at the establishment so that Plaintiffs and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.   That the Court enter an Order directing the Defendants to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6. That the Court enjoin Defendants to remediate the Pier Park establishment to the proper level of accessibility required for the design and construction of the establishment for first occupancy, as stated in Count Four;

7. That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiffs; and

8. That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 13th Day of April, 2018.

*/s/Michael F. Braun*
**MICHAEL F. BRAUN**
*Of Counsel for the Plaintiffs*
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, AL 36106
334.819.4030 p
334.521.3859 f
MFB@ADA-Firm.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 13th day of April, 2018 to the following:

**Pier Park, LLC**
c/o C T Corporation System
attn.: Registered Agent
1200 South Pine Island Road
Plantation, FL 33324

**Simon Property Group, L.P.**
c/o C T Corporation System
attn.: Registered Agent
1200 South Pine Island Road
Plantation, FL 33324

*/s/Michael F. Braun*
**MICHAEL F. BRAUN**
*Of Counsel for the Plaintiffs*
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, AL 36106
334.819.4030 p
334.521.3859 f
MFB@ADA-Firm.com